## Pozzuolo Estate.

186

Argued May 20, 1968.   Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Joseph Patrick Gorham,* for appellant.

*Roy H. Davis,* for appellee.

OPINION BY MR. JUSTICE JONES, January 15, 1969:

Margaret Pozzuolo (decedent), a Delaware County resident, died intestate on February 15, 1961, as the result of an airplane crash in Brussels, Belgium. Decedent was survived by her husband, Joseph, a minor at the time, and her parents, Elliott and Margaret Lovering. Elliott Lovering and Elizabeth Nudo, Joseph Pozzuolo's grandmother, were appointed co-administrators of decedent's estate.

The co-administrators entered into a contingent fee agreement with Joseph Patrick Gorham, a member of the Philadelphia Bar (appellant). Under this contingent fee agreement, attorney Gorham was to institute a trespass action for damages arising from decedent's death against Sabena World Airlines, the owner of the ill-fated airplane; for his services attorney Gorham was to receive one-third (1/3) of the amount recovered in the action.

Attorney Gorham retained a New York law firm to institute a suit against Sabena in the United States District Court in New York City on behalf of decedent's personal representatives, such firm to receive twelve (12%) per cent contingent fee. This firm suggested that attorney Gorham also retain the services of Kriendler and Kriendler. Kriendler and Kriendler, a firm well known for its legal work in aviation crash suits, was then handling several other suits arising from the same Sabena plane crash and had gathered valuable information concerning the cause of the crash which would enhance the strength of the decedent's personal representatives' claim for damages. From the information garnered by Kriendler and Kriendler, it was indicated that the crash had resulted from a defect in the construction of the particular airplane, and, on the basis of this information, suit could be justified not only against Sabena but also against Boeing Airplane Company, manufacturer of the plane.

Kriendler and Kriendler agreed to supply its information and to aid in the litigation for a contingent fee of ten (10%) per cent. With the potential cost of the litigation rising, attorney Gorham approached decedent's personal representatives for the purpose of having his contingent fee agreement revised; the parties agreed that attorney Gorham would now be paid fifty. (50%) per cent of whatever amount would be recovered by way of damages for decedent's death.

Suit was instituted against Sabena and Boeing in the United States District Court in New York City and was eventually settled for $45,000.00. After deducting twenty-two (22%) per cent in contingent fees for bringing the suit, the New York law firm sent attorney Gorham a check for $34,949.38.[1] Attorney Gorham deposited this check in his own attorney's account.[2]

At this stage attempts were instituted to settle the estate. Attorney Gorham took the position that he and the estate were to split the net amount recovered, to wit, $34,949.38, each to receive $17,474.69. Elliott Lovering, one of the co-administrators, contended that the estate was entitled to fifty (50%) per cent of the gross amount recovered, or $22,500.00.

Some nine months after the $34,949.38 check was received by attorney Gorham, Roy Davis, Esquire, attorney for co-administrator Lovering, requested the Orphans' Court of Delaware County to issue a citation directing that Elizabeth Nudo, the co-administratrix, show cause why she should not join with Lovering in filing an estate account; upon citation issued, Mrs.

---

[1] The fees for this New York law firm and Kriendler and Kriendler totaled $9,900.00, and the New York law firm deducted an additional $150.62 for their out-of-pocket expenses.

[2] Apparently, at a later date, attorney Gorham gave Joseph Pozzuolo, decedent's husband, $10,200.00 and deposited another $6,230.91 in a bank account set up by Order of the Orphans' Court of Delaware County to facilitate the administration of the estate.

Nudo made no response thereto nor did she or her counsel, attorney Gorham, appear. The Court, on February 28, 1967, directed that Mrs. Nudo join with Mr. Lovering in filing an account and, upon noncompliance by Mrs. Nudo with the Court's directive, the Court removed Mrs. Nudo as administratrix and directed attorney Gorham to turn over all papers pertaining to decedent's estate to attorney Davis. The Court reaffirmed this Order on June 7, 1967, and removed Mrs. Nudo as co-administratrix, and dismissed exceptions filed to its previous Order. The propriety of that ruling has been appealed to this Court (No. 127, January Term, 1968).

On July 31, 1967, Mr. Lovering filed a petition and accounting under Section 731 of the Fiduciaries Act of 1949.[3] Section 731 provides a method for the distribution of estates which do not exceed the value of $2,500.00, provided that one year has expired since the initial advertisement of the grant of Letters. In the account filed, Lovering simply accounted for the amount received from the Wrongful Death action in the United States District Court in New York City, and the debit side of said account provides as follows:

"Gross settlement        $45,000.00
Joseph Patrick Gorham, Esquire, Attorney, 50% contingent fee        22,500.00

Net proceeds for distribution according to Intestate Act        $22,500.00"

In the accounts, on the credit side thereof, credit is sought for $110.00 in administration expenses, $1,-

---

[3] Act of April 18, 1949, P. L. 512, §731, as amended, 20 P.S. §320.731.

350.00 counsel fee for attorney Davis, Lovering's counsel, for distribution *already made* to decedent's surviving spouse of $10,200.00 and distribution *to be made* of $5,520.00 to decedent's surviving parents and $5,-320.00 to decedent's surviving spouse, for a total of $10,840.00. It is to be noted that in the petition to which this account is attached, Lovering, inter alia, avers: (1) that the "only asset available consists of the proceeds of a Wrongful Death action" brought in the United States District Court for the Southern District of New York in which settlement was made and the remainder of the proceeds "for distribution to those entitled under the Wrongful Death Act is $22,-500.00"; (2) "Since after the deduction of administration expenses the proceeds go directly to those entitled under the Intestate Act and become no part of an estate, there is no estate to be distributed and no inheritance tax due."[4]

To Lovering's petition and accounting, from the Order of the Court below made July 18, 1967, it would appear that objections were filed by attorney Gorham on his own behalf and on behalf of Mrs. Nudo, the re-

---

[4] In *Frazier v. Oil Chemical Co.*, 407 Pa. 78, 81, 82, 179 A. 2d 202 (1962), we said: "At common law there was no right of action to recover damages for the wrongful death of a near relative in Pennsylvania. The right of action for a death caused by a wrongful act arises solely by statute. . . . Section 1 of the Act of 1855, as amended, in pertinent part, provides: 'The persons entitled to recover damages for any injuries causing death shall be the husband, widow, *children*, or parents of the deceased, and no other relatives; . . . and *the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy. . . .*' (Emphasis supplied). The sum recovered under the wrongful death statute, unlike the sum recovered under the survival statute, does not become a part of the decedent's estate but it is compensation to the statutorily designated persons for the wrongful death and the share which such persons take is determined by the intestate law of the Commonwealth."

moved co-administratrix.[5] On September 19, the Court below dismissed the objections, confirmed Lovering's account, and directed that the monies shown by the account "to be due the Estate" be paid over by attorney Gorham to Lovering's counsel. From that decree an appeal was taken to this Court (No. 138, January Term, 1968).

During the pendency of these two appeals, the Orphans' Court of Delaware County issued an attachment against attorney Gorham directing him to pay over to the estate the sum of $5,959.09 held in his attorney's account, and, upon noncompliance with this Order, the Court held attorney Gorham in contempt. The contempt order is the basis for the third appeal to this Court (No. 10, January Term, 1969).

The real nub of this entire controversy, the subject of apparently interminable litigation, is the amount of counsel fee to which attorney Gorham is entitled. Attorney Gorham claims that under the second contingent fee agreement with decedent's personal representatives he is entitled to $22,500.00 from the proceeds of the settlement of the litigation and that the expenses of retaining the New York law firm and Kriendler and Kriendler, approximating $10,000.00, should be borne equally by decedent's personal representatives and himself and that he should receive a net fee of approximately $17,500.00. Lovering, as the remaining personal representative, takes the position that the fifty (50%) per cent contingent fee agreed upon included the fee not only of attorney Gorham but also of New York counsel as well and that the latter's fee of $10,-000.00 should be paid out of the $22,500.00, which would render attorney Gorham's net fee approximately $12,500.00.

---

[5] While the Order of the Court below recites dismissal of these objections, the records in the Court below fail to disclose that any such objections were filed or the contents thereof.

Our review of this file has uncovered at the outset the presence of a very difficult problem which involves the jurisdiction and competency of the Orphans' Court of Delaware County to have acted at all in this matter.

In Pennsylvania there are two possible actions through the medium of which relatives, heirs and next of kin of a decedent can recover damages for the death of the decedent, i.e., a wrongful death action and a survival action. A wrongful death action is intended to secure compensation to certain statutorily-designated relatives of the decedent (Act of April 15, 1851, P. L. 669, §19, 12 P.S. §1601, and Act of April 26, 1855, P. L. 309, §1, as amended, 12 P.S. §1602). Any sum recovered in a wrongful death action does not become an asset of the decedent's estate. See: *Frazier v. Oil Chemical Co.*, supra, 81, 82; *Fisher v. Dye*, 386 Pa. 141, 145, 125 A. 2d 472 (1956); *McFadden v. May*, 325 Pa. 145, 149, 189 Atl. 483 (1937). Since the sum recovered in such an action is not an estate asset, the Orphans' Court has no jurisdiction or competency to act over the distribution of money recovered in the wrongful death action. See: *Chapman Estate*, 40 Pa. D. & C. 2d 601 (1966). Exclusive jurisdiction is in the Court of Common Pleas. See: *Usner v. Duersmith*, 346 Pa. 494, 495, 31 A. 2d 149 (1943). Cf. *Cornish Estate*, 76 Pa. D. & C. 603 (1951); *Webb v. Webb*, 66 Pa. D. & C. 390, 393 (1948).

The second type of action is a survival action (Fiduciaries Act of April 18, 1949, P. L. 512, §601, 20 P.S. §320.601 and §603, 20 P.S. §320.603), which is brought by the personal representative of the decedent and is an action which decedent himself could have instituted had he survived. Since such an action is brought, in effect, on behalf of the decedent, the amount recovered becomes part of his estate, and the Orphans' Court has exclusive jurisdiction over the

amount recovered. *Fisher v. Dye*, supra, at 146; *Davis' Estate*, 56 Pa. D. & C. 359 (1946); *Burns v. Goldberg*, 210 F. 2d 646 (3d Cir., 1954).

In the case at bar, both parties agree that the $45,-000.00 paid by way of settlement of the New York litigation represented a sum recovered in a wrongful death action. Attorney Gorham directly raised the question of jurisdiction of the Court below in exceptions to the Order of that Court on June 7, 1968, and in these exceptions clearly and unequivocally took the position that the proceeds came from a wrongful death action. When Lovering, the co-administrator, filed his petition and annexed thereto his account he distinctly labeled the $45,000.00 as proceeds recovered from a wrongful death action, and, in fact, in his petition for distribution, and in justification of his account filed under §731 of the Fiduciaries Act, he averred that there were no assets belonging to the decedent's estate. Under such circumstances there were no assets of the decedent's estate before the Court below, and the Court below clearly lacked jurisdiction and competency to act under such circumstances, and its several orders and decree clearly cannot stand.

After the long controversy between these parties and the ensuing litigation, it is regrettable that we reach the conclusion of lack of jurisdiction. However, neither by act of the parties nor by the act of this Court can jurisdiction be conferred upon a court where jurisdiction is nonexistent. The result we reach is not that the relatives, next of kin and heirs of decedent have *no remedy* to seek redress for what is alleged to be a claim by counsel for an exorbitant fee. Our conclusion simply is that such remedy does not lie in the Orphans' Court, which has no jurisdiction under the circumstances, and our ruling in no manner prejudices the rights of the parties to secure an appropriate adjudi-

cation of the propriety of the counsel fee in a proper tribunal.

Order (Appeal No. 127, January Term, 1968) vacated insofar as it directs attorney Gorham to turn over to the Orphans' Court the proceeds of settlement of the New York litigation. Decree (Appeal No. 138, January Term, 1968) vacated. Order (Appeal No. 10, January Term, 1969) vacated.

Each party to pay own costs in all three appeals.

Mr. Justice MUSMANNO did not participate in the decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

The majority concludes that the orphans' court lacked jurisdiction to order a removed personal representative to pay over the disputed monies which came into his possession in his fiduciary capacity because the monies represented proceeds from the compromise of a wrongful death action. It is my view that the focus of the majority's opinion is off target. The source of the funds is much less important than the fiduciary status of the person who is holding such funds. The Orphans' Court Act of 1951, section 301 clearly directs that "The Orphans' Court shall have exclusive jurisdiction of: . . . (13) Title to Personal Property. The adjudication of the title to personal property in the possession of the personal representative. . . ."

The comment to this section reinforces the conclusion that regardless of the source of such property, if the personal representative claims title to it, the orphans' court is the exclusive tribunal to determine ownership. Section 301(13) "is intended to obviate, whenever possible, a preliminary dispute as to whether the orphans' court has jurisdiction to determine the title to the disputed property." If the orphans' court has exclusive jurisdiction to determine ownership it cer-

tainly has jurisdiction to control and direct the personal representative's handling of such funds.

I might agree with the majority's result if the individual who held the disputed proceeds were someone other than the personal representative; but because of the personal representative's unique fiduciary relationship with the orphans' court, it is not only legislatively mandated but also appropriate that the orphans' court decide this dispute. The alternative result, regretfully reached by the majority, is to place the burden of proceeding upon the statutory beneficiaries who must bring an action in common pleas court to recover the funds which belong to them. The better approach is to direct the personal representative to turn over the funds to the orphans' court and then establish his claim in the appropriate forum. Therefore I would affirm the action of the court below.