## Urbano *v.* Zoning Hearing Board, et al.

298

Argued February 8, 1972, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*James E. Meneses,* for appellants.

*Joseph L. Torak,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., August 29, 1972:

This appeal presents for consideration issues arising from the following incredible events:

1. A decision by the court below based upon no testimonial record at any stage of the proccedings.

2. The reopening of a zoning decision upon motion of the beneficiary of its decade long dormancy.

3. Injection into the confusion an obsolete pleading known as a Bill of Review in Equity.

As never before we find it imperative to trace the extraordinary history of this litigation before we attempt to apply the appropriate principles of law.

In April 1961, Roland Urbano, brother of and predecessor in title to appellee Nicholas Urbano, operated a restaurant in a residentially zoned tract in Upper Merion Township, Montgomery County. He applied for a permit to enlarge the building and after a hearing during which testimony was taken and scribed by a sound machine the Township Zoning Board refused to issue the permit.

The Board found the restaurant operation itself was illegal in that:

1. The original grocery business which was the basis for the nonconforming use was conducted in a

different building and a valid transfer of the use had never been accomplished.

2. Only one change of nonconforming use was permitted under the Ordinance and it was expended when the original use (huckstering) was converted into the grocery use.

3. Abandonment of the use for a period in excess of one year during the decade 1950-1960 extinguished it.

The Urbanos then appealed the Zoning Board decision to the Common Pleas Court of Montgomery County. Notwithstanding the garbled unintelligible machine made record, the court without additional or repetitive testimony affirmed the Board.

Exceptions were filed but *never* prosecuted by the Urbanos. Instead they continued their efforts to commercialize the property by collateral approaches. The Township authorities likewise ignored the finding of the court below and simply sought to contain the illegal use in its 1960-61 posture. For example, in 1966 it permitted the construction of a porch to the rear of the restaurant but later by additional proceedings sought to enjoin the conversion of the porch into a kitchen and the demolition of the building to make room for larger restaurant facilities.

In 1970, Nicholas Urbano took a new tack. He argued to the Township fathers that newly found information in the Township records would justify a reversal of the 1961 ruling of the Board and court below. The Township agreed to set a hearing date to take the additional evidence and reconsider the prior decision. In the meantime Urbano filed a Bill of Review in Equity with the Court of Common Pleas of Montgomery County.[1]

---

[1] Because this 1961 hearing has been subject to final order by the Court of Common Pleas of Montgomery County on appeal, it

He sought to accomplish the following:

1. Review and change the Findings and Ruling of the court in the 1961 Zoning Board appeal.

2. Order the Township to permit removal of the existing restaurant structure and to allow replacement with a new building.

3. Order a new hearing for the purpose of hearing the newly found evidence.

The Bill of Review in Equity is an obsolete proceeding which has been replaced by Petition for Reargument under Pennsylvania Rule of Civil Procedure 1522.[2] A Bill of Review must be based upon newly discovered evidence, unavailable at the prior hearing or upon a finding of fraud. *In re Riddle's Estate,* 19 Pa. 431 (1852); Summary of Pennsylvania Jurisprudence, *Equity,* §188 (1959).

The court below, in disposing of the Bill, did not specifically inquire into whether the evidence was available at the prior hearing or whether the allegation that the failure of the Township to search out and consider what is said to be the newly found Township records amounted to fraud upon the reviewing court in 1961. After argument on preliminary objections,[3] Judge GROSHENS, on December 30, 1970, ordered the Township (1) to hold a hearing to receive the new evidence; (2) to reconsider the application of 1961, including the

would have been procedurally proper to seek the reopening of that order. *Commonwealth v. Tradesman's Trust Co.,* 19 Dauph. 224 (1916).

[2] As is stated in 13 Pennsylvania Law Encyclopedia, 563 Equity §148 (1959): "Since 1952, when the Rules of Civil Procedure governing equity were promulgated, the bill of review in equity has become obsolete."

[3] These preliminary objections challenged the right to bring such a bill in the absence of prosecution of the exceptions filed in 1961, the right of Nicholas Urbano to reopen a judgment against Roland Urbano, and alleged laches as a defense to the bill.

promulgation of findings of fact and conclusions of law; and (3) to return the matter to the Court of Common Pleas under the number and designation of the 1961 zoning appeal.[4]

The Board, pursuant to the order, held a hearing at which Urbano presented evidence relating to the Board's finding in 1961 that the use was illegal.[5]

Addressing himself to the finding that the nonconforming use had been transferred to the second building without legal approbation, appellee offered three applications and a letter from the Township Solicitor. The basis for the Board's finding was that on December 18, 1959 it had granted a variance which extinguished the nonconforming use status of the grocery store.

The first application offered by Urbano was for a building permit to renovate the building then used as a residence for grocery and "snack bar" use. Roland Urbano testified in addition to the prima facie application he sought permission to include a dry-cleaning operation in the building.

The Urbanos then presented their letter of February 6, 1959, from the Township Solicitor which reads as follows: "Reference the application filed January

---

[4] This order was not appealed by either party, in fact both parties executed it with dispatch. Although we have grave doubts as to the propriety of this part of the ruling of the court below in disposing of the Bill of Equity, see Appeal of Green, 59 Pa. 235 (1868); Eclipse Mach. Co. v. Harley-Davidson Motor Co., 286 F. 68 (3d Cir. 1923), as an unappealed and executed final order we will not review it.

[5] Much of the evidence presented at the hearing was outside the scope of evidence which may be presented under a bill of review. Summary of Pennsylvania Jurisprudence, Equity §188 (1959). The Township, apparently in keeping with its former determination to extend to Urbano the opportunity to present all his evidence, did not object to the admission of this evidence. Accordingly, we consider it properly presented.

15, 1959, please be advised that the alterations may be made as requested, so long as you continue the operation of the grocery and luncheonette, only. As we understand it, you will reside on a separate floor of the structure which you now utilize as a residence in its entirety. Kindly understand that this permit does not affect the building presently utilized as a grocery and luncheonette, and any further action with reference to that building would necessitate a new application."

The second application presented on this question was a request granted June 18, 1959 to erect a new sign advertising the restaurant business in the remodeled building. Finally, they presented a building permit application filed July 14, 1959 and approved by the Township to renovate the residential building as a restaurant.

On the issue of the prior change of the nonconforming use, the Board in 1961 had held that the initial nonconforming use was huckstering, and that after that owner died, a subsequent owner changed the use to grocery. At the remanded hearing, the Urbanos presented the testimony of three witnesses, including the brother of the initial owner, that a food market, in addition to the huckstering, was in operation on the premises at the date of the adoption of the first zoning ordinance, and has continued uninterruptedly since then.

As to abandonment during the 1950's, applications, filed by the prior owners whose continuous use was in question, were presented revealing that during the period in question: (1) a change of zoning had been sought to permit enlargement of the grocery building since space was inadequate to serve their customers; and (2) a sign permit was obtained to advertise this use.

After the hearing, the Board, on March 26, 1971, issued a lengthy decision affirming the position taken in

1961. Upon review, the Court of Common Pleas of Montgomery County reversed the Board, holding that the new testimony established appellee's lawful use and his right to replace the structure. Being consistent with the chaotic history of this case, the Board's findings were reported to the court below bearing the 1961 term and number and President Judge GROSHENS' opinion and the appeal to this Court bear the term and number of the equity proceeding commenced by the Bill of Review. As we have said the equity action was the subject to be finally adjudicated in December 1970. Therefore, we will consider this as a zoning appeal where the court below did not take additional evidence. This being the case, our scope of review is to determine whether the *Board* committed a manifest abuse of discretion or an error of law. *Bidwell v. Zoning Board of Adjustment,* 4 Pa. Commonwealth Ct. 327,     A. 2d     (1972); *Lower Providence Township and Wood v. Ford,* 3 Pa. Commonwealth Ct. 380, 283 A. 2d 731 (1971). We agree with the court below that the Board has met both standards of error.

Taking the contentions in the order of the least difficulty: (1) As to the issue of abandonment, the Board held that the applications presented by the Urbanos to show a continuing use do not "answer the key question as to whether such use was ever discontinued. . . ." The Board reaffirmed its position on the basis of the unrecorded testimony of two unnamed neighbors who at the 1961 hearing said they remembered the discontinuance of the use for more than one year. As President Judge GROSHENS said, this was an abuse of discretion:

"Hence, at the March 26, 1971 hearing the Board had before it the applicant's evidence in the form of signed and sworn Township documents and the anonymous statements of two phantom property owners made ten years ago. The Board found the former to be

'equivocal' and chose to believe the latter. In view of our Order of December 30, 1970, wherein we directed the Board to 'take testimony and receive exhibits'—this action on the part of the Board can charitably be described as unique. To suggest that the Board's decision on this issue was against the weight of the evidence is to belabor the obvious." This is especially true since the burden of proof was upon the two "phantom" protestants. *See, Marchese v. Norristown Borough Zoning Board of Adjustment*, 2 Pa. Commonwealth Ct. 84, 277 A. 2d 176 (1971). This decision of the Board, clearly against the weight of the evidence, is manifestly and capriciously an abuse of discretion which must fall. *Zoning Hearing Board v. Konyk*, 5 Pa. Commonwealth Ct. 466,   A. 2d   (1972).

(2) The Board reaffirmed its position that the change to restaurant use was foreclosed by the prior change to grocery store use. While the Board found that the appellee's new testimony "expands the use of [building] No. 2 from some sales to steady food market sales" at the time of the initial zoning ordinance, it holds that this merely confirms the use for huckstering. The Board has clearly committed an error of law in holding that a change of nonconforming use took place when "steady food market sales" became a "grocery." There is no basis in law or fact upon this record, as found by the Board itself, to conclude that any change of nonconforming use had occurred prior to the restaurant change in 1959. The Board's holding to the contrary is reversed.

(3) The most complex issue considered by the Board is appellee's right to move his nonconforming use to its present site. The Board held that the applications and letter presented at the hearing did not constitute approval to transfer a restaurant business to the residential structure and listed seven reasons for its conclusion: (i) The Urbanos never secured a use

and occupancy permit based thereon; (ii) Roland Urbano did not bring this matter to the attention of the Board in 1961; (iii) The issue was not raised until eleven years after the fact; (iv) At the 1961 hearing Roland Urbano justified his restaurant use by pointing to a tourist home which had existed on the premises in 1929; (v) The letter of February 6, 1959 is a denial of a request for a dry cleaning business, not an approval of a transfer; (vi) Roland Urbano applied for a permit to renovate in July 1959, which was the date he contends he had permission; and (vii) there are vital differences between the grocery-luncheonette allegedly approved in the February 6, 1959 letter and the restaurant which emerged after the July 1959 alterations.

The reasons advanced by the Board can be narrowed to three: (a) That a use and occupancy permit was not sought for the move; (b) That the 1959 move was not advanced as a justification for the restaurant in 1961; and (c) That the letter of February 6, 1959 did not sanction a restaurant use. While we agree with each of these findings, we cannot agree with the Board's conclusion that based upon these findings the restaurant was not legally moved prior to the grant of the variance for the building originally devoted to the nonconforming use.

The record clearly establishes that in early 1959 the Urbanos, in an effort to expand its operation sought to move their grocery-luncheonette to the large residential building on the tract. In addition, they sought to add a cleaning plant. The Township, through its solicitor's letter, agreed to the move to the main building both as to construction and as to use, subject to the limitation of use as it existed in the prior location. Some months later, the Urbanos wanted to change the use from grocery to restaurant and filed the permits necessary to accomplish their objectives. Approval was given for the alteration but the Township did

not, as it had done previously, expressly authorize the use. When the dust settled down, the main building became a restaurant. Finally, later on a variance was obtained to use the original store as an office or apartment.

The Board, following the chronology as we have related, arrived at is finding. Notwithstanding this, the Board holds that these events fail to establish a legal use of the restaurant building.

The initial question, which the Board failed to delineate, is whether the move to the residential building which preceded the change to restaurant use was valid. If so, the use of that building would pre-date the variance and thus preclude the question of extinction.

We disagree with the Board's fifth reason for ignoring the validity of the transfer. The language of the letter of February 6, 1959, clearly approves renovation of the residence for "the operation of the grocery and luncheonette." Approval having been given for that move, the Township cannot at that point eradicate the legality of the use of the residential building.

The next question then is whether the restaurant change was valid. Section 1600 (c) of the Upper Merion Township Zoning Ordinance provides that any nonconforming use may be changed to another use of the same classification, but that the change may be had but once. No permit to extend the use need be obtained.

As we have held, grocery usage was the original nonconforming status of the premises. The change to restaurant use is not prohibited by the ordinance. Since the Township in February 1959 gave permission for use of the residence as a grocery, the original nonconforming use, as a matter of law, the Urbanos could change that use to any other use permitted under Section 1600 (c). Since restaurant uses are in order the change of July, 1959 would be legal.

We find nothing significant in the failure of the Urbanos to seek an occupancy permit for their new location when the Township by letter approved the nonconforming use there. Nor is it fatal to his cause that he either did not know or did not communicate the legal consequences of these events at the 1961 hearing.

We do not intend to posit ourselves as members of a super zoning board with the power to interpret the facts as we see fit and in the circumstances presented herein we have not.

The Board which reheard this matter is an entirely reconstituted Board, and the testimony taken by the 1961 Board was not available to the present Board. Therefore, we feel constrained to hold that the Board's failure to recognize the change to restaurant usage, for the reasons it enumerated, was a manifest abuse of its discretion in light of the clear factual background which the available record presents.

Having determined, as did the court below, that the Board erred in holding the Urbanos' nonconforming use illegal, we must turn to the issue which initiated this controversy, to wit, the request to expand that use by the construction of a new building. The court below found that there is sufficient evidence in the record (although the Board had not considered this issue) to warrant the conclusion that the nonconforming use extended over the Urbanos' entire tract. Relying on *Eitneir v. Kreitz Corporation*, 404 Pa. 406, 172 A. 2d 320 (1961), the court concluded that Urbano "may expand that use over as much of the tract as he sees fit as long as he does not violate any relevant building codes." We cannot sustain this position.

The record discloses that in 1959 the Urbanos were awarded a variance to use one building for office and apartment use. Clearly, this portion of the property and any land devoted to that use, are no longer subject to the nonconforming use. *See*, Rothkopf, *The Law of*

*Zoning,* 46-1 (3d ed. 1966). Where the issue is that of permissible expansion of a nonconforming use, the determination of that issue must be based upon an evidentiary record clearly defining the present extent of that use, as well as its historical background. The record of the 1961 hearing is forever lost, and the 1971 hearing, because of its pre-occupation with the 1961 Board decision did not structure a supportable foundation for the order of the court below. Accordingly, we issue the following

ORDER

AND NOW, this 29th day of August, 1972, the order of the Court of Common Pleas of Montgomery County is hereby affirmed insofar as it reverses the Upper Merion Township Zoning Hearing Board's affirmance of the May 29, 1961 decision of the Upper Merion Township Board of Adjustment and the December 7, 1961 decision of the Court of Common Pleas of Montgomery County in *Urbano v. Upper Merion Township Board of Adjustment*; the order of the Court of Common Pleas of Montgomery County is reversed insofar as it directs that Upper Merion Township issue a building permit or such other relief as is necessary to permit the construction sought herein and this matter is hereby remanded to the Court of Common Pleas of Montgomery County with direction that it be further remanded to the Zoning Hearing Board of Upper Merion Township for proceedings, including the taking of pertinent testimony in order to determine the extent, if any, to which the nonconforming use, here in issue, may be extended.

———

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. I view the lower court's order of December 30, 1970, directing Upper Merion Township (Township) to (1) hold a hearing to re-

ceive new evidence; (2) reconsider the 1961 application, including the promulgation of findings of fact and conclusions of law, and (3) return the matter, after hearing and reconsideration, to the Court of Common Pleas, to be an interlocutory order and not appealable. Therefore, I believe that we should consider the Township's preliminary objections which alleged laches as a defense to the bill of review, and challenged (1) the right of Nicholas Urbano to bring a bill of review in equity without the prosecution of the exceptions filed in 1961 and (2) the right of *Nicholas Urbano* to reopen a judgment *against Roland Urbano.*

My examination of the record and the unusual procedural aspects of this case convinces me that the Township's preliminary objections should have been sustained and the appellee's bill of review should have been dismissed.

However, more basic and controlling is that a bill of review could not be used to set aside or strike off a judgment at law. *Frantz v. City of Philadelphia,* 333 Pa. 220, 3 A. 2d 917 (1939). A bill of review was always limited to an action in equity.

This is not simply a procedural nicety but rather involves jurisdiction, the absence of which is fatal to litigation at whatever stage of the proceedings it is recognized. *See: In re Estate of Pozzuolo,* 433 Pa. 185, 249 A. 2d 540 (1969).