Joseph M. **DONLAN**, Administrator of the Estate of Markeith Raekwon Ketchmore, Jr., and in His Own Right and on Behalf of His Natural Parent and Father, Keith Keon Ketchmore Plaintiff,

v.

Thomas J. **RIDGE**, in His Official and Individual Capacity, as Governor of the Commonwealth of Pennsylvania, et al. Defendants.

No. Civ.A. 99–684.

United States District Court, E.D. Pennsylvania.

July 27, 1999.

Ray J. Walsh, Springfield, PA, for Plaintiff.

Kristen Kirk, Office of Attorney General, Philadelphia, PA, Jeffrey M. Scott, City of Philadelphia Law Dept., Civil Rights Unit, Philadelphia PA, for Defendants.

## MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

Presently before the court is the motion of the defendants Lutheran Children and Family Services ("Lutheran"), Reverend William Erat, Yodit Amaha, Rosalind Swinton, and Theodora Berlatsky to dismiss the plaintiff's complaint (Document No. 19) pursuant to Federal Rule of Civil Procedure 12(b)(6), and the response of the plaintiff, Joseph M. Donlan ("Donlan"), thereto. (Document No. 20). While the complaint of the plaintiff contains seven counts, in his response to the defendant's motion to dismiss (Document No. 20), the

plaintiff withdrew Counts III, IV, and V, and part of VI, leaving for consideration Counts I, II, only the allegation of a due process violation under the Fourteenth Amendment in Count VI, and Count VII.[1] Jurisdiction is proper over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a), and over the state law claims pursuant to 28 U.S.C. § 1367. Based on the following analysis, the defendant's motion to dismiss will be denied in part and granted in part.

## I. Background

This is an action on behalf of the estate of Markeith Raekwon Ketchmore, by Joseph M. Donlan, administrator of the estate, and on behalf of Keith K. Ketchmore, surviving parent and natural father of Markeith Ketchmore. The following facts are taken from the complaint and are viewed as true in the light most favorable to the plaintiff. Markeith Ketchmore's natural mother is Camille Sneed. Markeith Ketchmore, was born on January 5, 1996. (Complaint at ¶ 13). Ms. Sneed lost custody of Markeith to the Department of Human Services ("DHS").[2] Lutheran Children and Family Services ("Lutheran") was one of many non-profit agencies with contracts with DHS to provide foster care services, and the DHS placed Markeith with Lutheran. (Complaint at ¶ 31). On August 5, 1996, Markeith became a ward in the home of Ms. Margarita Ortiz, whose application to become a volunteer foster parent was accepted by Lutheran in February 1996. (Complaint at ¶ 30).

The plaintiff alleges that on or about July 13, 1998, Markeith Ketchmore (age two years), while having his underclothing changed, was told to leave and return with a diaper; and furthermore, when his absence was noted after an extended period, perhaps hours, he was discovered immersed and drowned, asphyxiated by water, in the Ortiz's swimming or wading pool. (Complaint at ¶ 35).[3] Subsequently, the plaintiffs brought suit against Governor Thomas J. Ridge, Philadelphia Court of Common Pleas and Judge Paul P. Panepinto, and Lutheran Children and Family Services, defendant Yodit Amaha, defendant William Erat, defendant Theodora Berlatsky, and defendant Rosalind M. Swinton.

## II. The Arguments of the Defendant

The defendants first argue that Counts I (Wrongful Death) and II (Survival Action) of the plaintiff's complaint with respect to the defendant Reverend William Erat should be dismissed for failure to state a claim upon which relief can be granted under the Federal Rule of Civil Procedure 12(b)(6), because the complaint fails to allege with specificity any action taken by Reverend Erat which might bear on the wrongful death or survival action claims. Next, the defendants argue that Count VI should be dismissed because the plaintiff's allegations of violations of the Pennsylvania Child Welfare Laws, 11 P.S. § 2216(a) and 55 Pa.Code § 3130 are not redressable under 42 U.S.C.A. § 1983. Furthermore, the defendants argue that Count VI should be dismissed pursuant to Federal Rule of Civil Procedure and 12(b)(6) with respect to Lutheran, and its officers and employees because, as a non-profit foster care agency, Lutheran is not a state actor under 42 U.S.C. § 1983. Finally, the defendants argue that Count VII should be dismissed because vicarious liability is not redressable under § 1983.

## III. Standard for a Motion to Dismiss

Rule 12(b) of the Federal Rules of Civil Procedure provides that "the following defenses may at the option of the pleader be

---

1. Because the plaintiff dropped all counts against the defendants, Thomas J. Ridge and Paul P. Panepinto in both their official and individual capacities, there is no need to consider here their respective motions to dismiss (Documents 16 and 18).

2. It is not clear from the plaintiff's complaint the date on which Ms. Sneed lost custody of Markeith.

3. It is not clear from the plaintiff's complaint who told Markeith to get a diaper.

made by motion: (6) failure to state a claim upon which relief can be granted." In deciding a motion to dismiss under Rule 12(b)(6), a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *See Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

Generally, the Federal Rules of Civil Procedure hold claims to the standard of notice pleading. *See* Fed.R.Civ.P. 8(a) (stating that pleadings should contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). A motion to dismiss the complaint for insufficiency of the pleadings should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## IV. Discussion

### A. Count I (Wrongful Death) and Count II (Survival Action)

I conclude that the allegations in Counts I and II of the plaintiff's complaint are sufficient to state a claim against Erat because it is not "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99.

The plaintiff seeks to recover under both a theory of wrongful death under 42 Pa. C.S.A § 8301 on behalf of Keith K. Ketchmore (Count I) and a survival action claim on behalf of Markeith Ketchmore pursuant to 42 Pa.C.S.A. § 8302 (Count II). In support of their motion to dismiss both claims, the defendants argue that the complaint "fails to allege with any degree of specificity any action taken by Reverend Erat" which might bear on the wrongful

death and survival action claims. (Motion to Dismiss at 4). The defendants' argument, however, is unpersuasive when read against the background of the general policy of notice pleading articulated in Federal Rule of Civil Procedure 8(a).

■ The facts underlying both the claim of wrongful death and survival action are the same. Paragraph eighteen of the complaint alleges that Erat is the executive director of the defendant Lutheran and acted as Lutheran's agent. Furthermore, paragraphs twenty, thirty, and thirty-one describe the role of Lutheran in the care of Markeith Ketchmore and the facts leading up to his death. In paragraphs forty-five, fifty, and fifty-one of the complaint, the plaintiff alleges that Erat was negligent, and that, as a result of Erat's omissions, in his official and supervisory capacities, Markeith Ketchmore was drowned and the plaintiff suffered damages thereby. Such a plain statement of the claim complies with Federal Rule of Civil Procedure 8(a) and states a cause of action under Pennsylvania law for both wrongful death and survival action.

■ Under the Pennsylvania wrongful death statute, an action may be brought to recover damages caused by the wrongful act, neglect, unlawful violence, or negligence of another. *See* 42 Pa.C.S.A. § 8301(a).[4] An action for wrongful death "is not for damages sustained by the decedent but for damages sustained by the plaintiff by reason of the decedent's death." *Dennick v. Scheiwer,* 381 Pa. 200, 201, 113 A.2d 318 (1955).

■ An action to recover damages for wrongful death of a person must be brought separate and distinct from a survival action. *See Baumgart v. Keene Bldg. Products Corp.,* 430 Pa.Super. 162, 633 A.2d 1189, 1191 (1993). A survival action, however, unlike a wrongful death action, is not a new cause of action, but merely continues in the personal representative

---

**4.** An action for wrongful death may be brought by the personal representative of those persons entitled to recover damages for

wrongful death under the Pennsylvania statute. *See Kiser v. Schulte,* 538 Pa. 219, 226, 648 A.2d 1 (1994).

the right of action which accrued to the deceased at common law. *See Harvey v. Hassinger,* 315 Pa.Super. 97, 461 A.2d 814, 817 (1983). A survival action is brought by the personal representative of the decedent, and is an action which the decedent himself could bring had he survived and, in effect, is brought on behalf of the decedent. *See In re Pozzuolo's Estate,* 433 Pa. 185, 249 A.2d 540, 544 (1969).

In order to succeed on his claims of wrongful death and survival action on behalf of Keith Ketchmore and Markeith Ketchmore, respectively, Donlan must establish that the defendants were negligent with respect to the care of Markeith Ketchmore. *See Estate of Zimmerman v. S.E.P.T.A.,* 168 F.3d 680, 684 (3d Cir. 1999); *Carroll v. Colon,* 608 F.Supp. 1277, 1279 (E.D.Pa.1985) (holding that an amended complaint, alleging injuries to the driver caused by an auto accident which were allegedly the result of defendant's negligence, and that Pennsylvania Survival Act was the basis for the cause of action, stated a valid survival claim under Pennsylvania law). Thus, in consideration of the facts pleaded, the allegations of the plaintiff's complaint state a cause of action for both wrongful death and survival action under Pennsylvania law. Therefore, the defendant Erat's motion to dismiss the claims of wrongful death (Count I) and survival action (Count II) will be denied.

## B. Count VI (Violation of Due Process)

■ In Count VI of its complaint, the plaintiff alleges violations of substantive due process under the Fourteenth Amendment of the United States Constitution and 42 U.S.C.A. § 1983 as well as violations of the Pennsylvania Child Welfare Laws, 11 P.S. § 2216(a) and regulations promulgated thereunder, 55 Pa.Code § 3130 *et seq.*[5] In order to state a claim for relief in an action brought under § 1983, the plaintiff

must establish: (1) that they were deprived of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed under color of state law. *See American Manufacturers Mutual Ins. Co. v. Sullivan,* —— U.S. ——, ——, 119 S.Ct. 977, 984, 143 L.Ed.2d 130 (1999).

In support of its motion to dismiss Count VI, the defendants first argue that the plaintiff fails to state a claim with respect to the plaintiff's allegations of violations of the Pennsylvania Child Welfare Law, 11 P.S. § 2216(a), and 55 Pa.Code § 3130, because such violations are not redressable under § 1983. Thus, the defendants argue that the plaintiff's claims of violations of state laws are insufficient to state a claim for relief under § 1983 because they are not rights secured by the Constitution or laws of the United States.

■ The defendants are correct that a violation of a state statute is not sufficient, standing alone, to establish a violation of a constitutional right necessary to prevail in a § 1983 civil rights claim. *See Ms. B. v. Montgomery County Emergency Service, Inc.,* 799 F.Supp. 534, 536 (E.D.Pa.1992), *aff'd sub.nom., Ms. B. v. U.S. Postal Service,* 989 F.2d 488 (3d Cir.1993). In *Ms. B.,* the plaintiff alleged that the defendants' disclosure to law enforcement personnel and to supervisors of threats made by the plaintiff violated section 111 of the Pennsylvania Mental Health Procedures Act, 50 P.S. §§ 7101 *et seq.* In granting the defendants' motion for summary judgment, the court held that, even if the defendants' conduct violated the MPHA, such a violation of a state statute, by itself, is not sufficient to establish a violation of a constitutional right. *See id.* Likewise, in *Ruman v. Com. of Pa. Dept. of Revenue,* the court held that a violation of the Pennsylvania Unfair Trade Practice and Consumer Protection Law does not give rise to an action under § 1983 because it is a

---

5. Curiously, both the plaintiff and the defendants fail to realize that the Pennsylvania Child Welfare Laws 11 P.S. §§ 2201–2224 were repealed, effective ninety days from December 19, 1990. For the parties' mutual edification, the new laws can be found in 23 Pa.C.S.A. §§ 6301–6384.

state law claim involving no federally secured right. 462 F.Supp. 1355, 1361 (M.D.Pa.1979), *aff'd by,* 612 F.2d 574 (3d Cir.1979). Because the plaintiff alleges a violation of state law which involves no federally secured right, the defendants motion to dismiss Count VI will be granted to the extent that the plaintiff's § 1983 claim is based only on violation of state law.

The defendants next argue that the substantive due process claims under § 1983 should be dismissed because Lutheran, as a non-profit foster care agency, and its officers and employees are not state actors under § 1983. In support of this argument, the defendants rely on *Black v. Indiana Area School District,* in which the Court of Appeals for the Third Circuit held that:

> [A] state contractor and its employees are not state actors simply because they are carrying out a state sponsored program and the contractor is being compensated therefor by the state. Nor does the fact that the activity being performed is a public function render the contractor and its employees state actors. For the nature of the contractor's activity to make a difference, the function performed must have been traditionally the exclusive prerogative of the state.

*Black by Black v. Indiana Area School District,* 985 F.2d 707, 709 (3d Cir.1993). The Third Circuit Court of Appeals reasoned that the above holding followed from *Rendell–Baker v. Kohn* in which the Supreme Court held that a non-profit, privately operated school's receipt of public

funds did not make the school's discharge decisions acts of the state subject to suit under § 1983, even if virtually all of the school's funding derived from government funding. *See Rendell–Baker v. Kohn,* 457 U.S. 830, 842, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). The contractor's activity in *Rendell–Baker* did not make them state actors because the policy of Massachusetts—to provide educational services for maladjusted high school students at the expense of the public—did not make the services the exclusive prerogative of the state. *See* 457 U.S. at 842, 102 S.Ct. 2764.

The defendants attempt to bolster their argument by analogizing to *Rendell–Baker,* arguing that the social workers employed by Lutheran, like the school teachers in *Rendell–Baker,* are not state actors. One court in the Eastern District of Pennsylvania, however, has recognized that foster care agencies are different from other state contractors and the school teachers in *Rendell–Baker* because they perform a function that is exclusively the prerogative of the state, namely the removal of children from their homes. *See Estate of Earp v. Doud,* 1997 WL 255506 *2 (E.D.Pa.1997) In *Estate of Earp,* the action was brought by the natural parents of Adam Earp, who was involuntarily removed from his mother's care, placed in a foster home, and died there in a fire. *Id.* at *1. In denying the defendant's motion for summary judgment, Judge Fullam held that "[W]hile the day to day care of a child is not the exclusive prerogative of the state, the forcible removal of children from their homes most certainly is, and thus a foster care organization is a state actor for the purposes of section 1983 liability." [6]

---

**6.** The issue of whether foster care organizations are state actors has divided lower courts ever since *DeShaney v. Winnebago County Dept. of Social Services,* in which the Supreme Court, considering whether social workers violated the civil rights of a child who was being abused by his father but who had not been removed from his father's custody, held that the State owed no duty to the child whose abuse it was investigating because the Due Process clause does not require the State to protect life, liberty, and property of its citizens against invasion by private actors.

*See* 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249. The majority in *DeShaney* did not resolve the issue of foster care, but recognized that it might be a situation "sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect." *See id.* at 201 n. 9, 109 S.Ct. 998. It has been noted that:

> The principle that appears to be emerging from the lower court decisions (though not all cases can be explained by this approach) is that the government has an affirmative

*Id.* Judge Fullam's conclusion is consistent with rulings in cases from other circuit and district courts. *See In Taylor By and Through Walker v. Ledbetter,* 818 F.2d 791, 797–799 (11th Cir.1987) (upholding a due process claim by a child who had sued state and county officials for injuries sustained while in custody of the foster parents); *B.H. v. Johnson,* 715 F.Supp. 1387, 1396 (N.D.Ill.1989) (holding that a child has a § 1983 action against the state while in foster care where the state is deliberately indifferent to the likelihood that a foster home is unsafe, yet places the child there or allows the child to remain there); *Artist M. v. Johnson,* 726 F.Supp. 690, 699 (N.D.Ill.1989) (*rev'd on other grounds*) (holding that when a state obtains an order to remove a child from his home and takes the child into protective custody, it is exercising affirmative state power over the child to the extent that it has a due process obligation to assume responsibility to provide for the child's basic needs).

In reaching the above conclusion, Judge Fullam recognized that he was breaking with a prior decision in the Eastern District of Pennsylvania, namely *Nixon v. Dep't of Human Serv.,* in which the court held that foster care agencies and foster parents were not state actors. *See Nixon v. Department of Human Services,* CA. No. 95–4434, slip op. at 3 n. 2 (E.D.Pa. Dec. 6, 1995). Judge Fullam, however, drawing a distinction between foster care parents and agencies for the purposes of § 1983 liability, reasoned that the case of a foster care agency is analogous to *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

In *West,* the Supreme Court found that a physician employed by the state to provide medical care to inmates in state prison was a state actor for the purposes of § 1983 liability. Through incarceration, North Carolina had deprived inmates of access to medical care, and thus had a nondelegable duty to provide medical care of its own. *See id.* at 55, 108 S.Ct. 2250. Because it was only the State which could provide medical care to the prisoners, the physician with whom the State contracted to provide such care was a state actor. *See id.* Analogizing to *West,* Judge Fullam reasoned that the forcible removal of child from his homes by the foster care agency was exclusively the prerogative of the state, because only the state could remove children from their homes. Thus, Judge Fullam denied the defendants' partial motion for summary judgment. *See Estate of Earp,* 1997 WL 255506 at *1–2.

█ The defendants argue that Judge Fullam's decision departs both from the precedent of the Third Circuit Court of Appeals in *Black* as well as from companion cases to *Rendell–Baker.* I find Judge Fullam's reasoning persuasive, however, for two reasons. First, his reasoning is consistent with the recognition by the majority in *DeShaney* that there might be a situation sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty on the part of the State to protect the life, liberty, and property of its citizens against invasion by private actors. *See* 489 U.S. at 201 n. 9, 109 S.Ct. 998, 103 L.Ed.2d 249. Second, as the defendants recognize, Ms. Sneed lost custody of Markeith Ketchmore because of neglect shortly after his birth (Motion to Dismiss at 2), and thus Markeith was not placed with DHS *voluntarily.* As such, the situation here is analogous both to *Estate of Earp* and the decisions from other district and circuit courts discussed above.

The plaintiff successfully states a claim for which relief might be granted because, in light of Judge Fullam's opinion, it is not beyond doubt at this stage that the plain-

---

duty to protect children in foster care when the government placed them there. But the government has no such obligation to provide protection when the children are voluntarily put in foster care without active government involvement.

ERWIN CHEMERINSKY, FEDERAL JURISDICTION, § 8.9 at 505 (2d edition 1994). Therefore, the issue of whether a foster care agency is a state actor remains unsettled after *DeShaney.*

tiff can prove no set of facts in support of his claim which would entitle him to relief. More specifically, taking the allegations of the complaint as true, the defendants were state actors for the purposes of § 1983 liability.[7] On the basis of the above analysis, the allegations of Count VI of the plaintiff's complaint are sufficient to state a cause of action pursuant to § 1983.

### C. Count VII (Vicarious Liability)

In Count VII of the complaint, the plaintiff alleges that Lutheran is vicariously liable for the "failure of their supervisory personnel to promptly investigate the negligence of Defendant Ortiz, the failure to investigate the home of Defendant Ortiz and for the Wrongful Death ... as well as the aforementioned violations of State and Federally created statutory and constitutional rights." (Complaint at ¶ 90). In support of their motion to dismiss Count VII, the defendants argue that liability under § 1983 cannot be based on vicarious liability.

 Liability under § 1983 cannot be based on vicarious liability. *See Monell v. New York Dept. of Soc. Serv.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Unterberg v. Correctional Medical Systems Inc.*, 799 F.Supp. 490, 498 (E.D.Pa. 1992). Although it is not clear in the complaint that Count VII is a claim under § 1983, the plaintiff does seeks attorney's fees under § 1988 for Count VII. Therefore, Count VII will be dismissed for failure to state a claim upon which relief may be granted, to the extent that the plaintiff alleges vicarious liability on the part of Lutheran for the violation of constitutional rights under § 1983.

### V. Conclusion

Based on the foregoing, the defendants motion to dismiss will be denied in part

and granted in part. An appropriate Order follows.

### *ORDER*

**AND NOW** this 27th day of July, 1999, upon consideration of the motion of defendant Lutheran Services, defendant Yodit Amaha, defendant William Erat, defendant Theodora Berlatsky, and defendant Rosalind M. Swinton to strike the complaint of the plaintiff Joseph M. Donlan, Administrator of the Estate of Markeith Raekwon Ketchmore, Jr., and in his own right and on behalf of his natural parent and father, Keith Keon Ketchmore, pursuant to Federal Rule of Civil Procedure 12(b)(6) (Document No. 19), and the response of Lutheran (Document No. 20), and based on the foregoing memorandum, it is hereby **ORDERED** that the motion is **GRANTED IN PART** and **DENIED IN PART.** Count VII of the plaintiff's complaint is **DISMISSED** to the extent that it alleges vicarious liability for violations of civil rights under § 1983.

**IT IS FURTHER ORDERED** that Counts III, IV, V, and the claims for violations of the First, Fifth, and Eighth Amendments in Count VI are **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that the motion of the defendant to dismiss Count VI of the plaintiff's complaint is **GRANTED** to the extent that the plaintiff's § 1983 claim is based only on violation of state law.

**IT IS FURTHER ORDERED** that the defendants must answer Counts I, II, and VI of the plaintiff's complaint not later than the 30th day of August, 1999.

---

7. It is worth noting that a determination of whether Lutheran did in fact perform a function which is traditionally the prerogative of the state may depend on the nature of the contract between Lutheran and the Department of Human Services. The plaintiff alleges that DHS—presumably acting pursuant to their contract with Lutheran—inappropriately placed Markeith Ketchmore in the home of Margarita Ortiz. (Complaint at ¶¶ 78, 85).