Eitnier, Appellant, *v.* Kreitz Corporation.

Argued April 19, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*John S. Speicher,* with him *Terrence E. Connor,* for protestants, appellants.

*Paul H. Edelman,* with him *Paul D. Edelman,* and *Forrest G. Schaeffer, Jr.,* for applicant, appellee.

*Edward G. Wink,* for Board of Adjustment, appellee.

OPINION BY MR. JUSTICE EAGEN, June 26, 1961:

The Board of Adjustment of the City of Reading, Berks County, directed the issuance of a permit to Kreitz Corporation, the appellee, for construction of a facility to be used as a trucking terminal, a nonconforming use, on land located in a zoned residential area. On appeal, the court of common pleas heard further testimony, adopted the findings of the board and affirmed its action. The correctness of this order is now before us for consideration. The appellants are protestants, being owners of residential properties in the same area.

Kreitz Corporation is a Pennsylvania corporation authorized to engage in the business of selling, improving and leasing real estate. The particular land involved is an unimproved tract, 324 feet wide with a uniform depth of 162 feet. It was purchased on September 11, 1957, from Morris Kreitz and Sons, a partnership, who had acquired title in 1947. The zoning ordinance was adopted by the municipality on February 6, 1957, effective ten days later. The land is situated in a zoned RMF (residential multi-family) district, however, the immediate area is and has been for many years a combination of residential and commercial uses. The land on the opposite side of the street, while designated RMF, is used exclusively for terminal facilities by trucking firms. The application for the permit herein was originally filed in June of 1957, by Morris Kreitz and Sons, predecessor in title to Kreitz Corporation. On June 26, 1957, the permit was granted. Construction of the building was delayed and on

April 24, 1958, the Kreitz Corporation filed a new application for a permit.

Kreitz Corporation is presently the owner of all of the land on the east side of the block facing on Tulpehocken Street. A portion of this tract immediately adjoining the land in issue is leased to Morris Kreitz and Sons, who have for many years been continuously engaged in the business of hauling heavy business machinery and similar equipment for which they enjoy certification of right from the Interstate Commerce Commission and the Pennsylvania Public Utility Commission. On the southeast corner of this portion of the land is constructed a cement block one-story building and addition (built in 1947), containing a total space of 8500 square feet. This building is used as a trucking terminal. The surrounding vacant land, including a portion of that involved, was used continuously for the parking of trucks and trailers. Machinery is brought to the site by other haulers and by trucks of Kreitz and Sons, unloaded, reloaded, and frequently stored temporarily while awaiting shipment to consignees. There is rigging equipment on the premises for handling and hoisting the heavy equipment. The addition to the building has three stalls into which trucks can be operated for loading and unloading purposes.

The specific land in dispute was leased to Bingaman Motor Express, a common carrier, in 1954, which continued in possession until sometime in 1955. A trailer, equipped with electric and phone service, was parked on the land for use as an office. A flat-bed truck was used as a loading and unloading platform. During the period of the lease, the land was used for the storage of trailer equipment, and as a terminal for the transfer of freight. Bingaman, during the normal course of operation, used approximately 15 to 18 pieces of equipment. Following discontinuance of use of the land by

Bingaman in 1955, the Lancaster Transportation Company began use of the land which continued until May or June of 1958. It did not pay rent or enter into a lease. Lancaster is a common carrier with a terminal located on the opposite side of the street. The land, during this period, was used for the parking of tractor-trailers and "straight jobs" and frequently for the unloading and reloading of long piping and similar freight that could not be handled on the dock of Lancaster's permanent terminal.

On May 26, 1958, Kreitz entered into a written lease for the land with Fowler-Williams, a common carrier, for use of the land as a trucking terminal. The lease provides for the construction of a garage and trucking terminal building thereon. A copy of the plans and specifications are attached to the lease. They indicate intended construction of a building covering an area of 3,578.75 square feet, standing at a height of 16 feet, with an 8-foot overhang of the roof over the loading docks on the east and west sides of the building. The permit applied for and involved herein concerns only zoning. A building permit for the construction of a particular type and size building has not yet been filed. However, the plans and specifications attached to the lease manifest what is intended.

It is the contention of Kreitz that the contemplated use of the land for which a permit has been granted constitutes in law a continuation of a pre-existing or nonconforming use which began before and continued subsequent to the passage of the zoning ordinance; that there is no essential difference in the use contemplated, except in degree.

While the scope of appellate review is broad in its nature, we are limited in the case of an *extension* of a nonconforming use to a determination of whether or not the evidence sustains the lower court's findings, and whether or not the proceeding is free from a viola-

tion of law or a manifest abuse of discretion. See *Archbishop O'Hara's Appeal,* 389 Pa. 35, 131 A. 2d 587 (1957). Our careful review of the record discloses that the findings of fact in the court below are amply supported by the evidence. In fact the testimony, which proves that the land involved was used as a trucking terminal from the year 1954, until May or June 1958, is uncontradicted. In view of this, the argument cannot be sustained that the court erred in finding that such a nonconforming use existed before, and continued until after, the passage of the zoning regulations.

The zoning ordinance of the city provides, inter alia, as follows: "Section 1702—Nonconformity—From and after the effective date of the Zoning Ordinance, any existing lawful use of any structure, building, sign and/or land not in conformity with the regulations, limitations, restrictions and/or provisions prescribed in the Zoning Ordinance shall be regarded as a nonconforming use; and any existing lawful structure, building, sign and/or other improvements of land not in conformity with the regulations, limitations, restrictions and/or provisions of the Zoning Ordinance shall be regarded as a nonconforming structure; but they and/or it may be continued in such nonconformity subject to the following:" It is noted that nowhere does the ordinance deal with the question of the continuation of a nonconforming use, except to say that it may continue. Neither the extent, quantity nor quality of the use is mentioned.

The legal question necessarily arises: May a nonconforming use existing at the time of the passage of the zoning ordinance be continued over the land devoted to the use, when the continuation results in the construction of a new building? Under the circumstances, we conclude that such is lawful. It is, in effect, enclosing the use carried on in the open air, at

least partially, within the confines of a building structure. It is, more or less, a natural expansion and growth of the business and use. The cases of *Peirce Appeal*, 384 Pa. 100, 119 A. 2d 506 (1956) and *Schneider, Inc. v. Zoning Board of Adjustment*, 389 Pa. 593, 133 A. 2d 536 (1957), support this general basic proposition. Further, nowhere within the ordinance is there an inhibition, against the owner enclosing within a building the land lawfully employed as a nonconforming use, nor the expansion of the use.

Undoubtedly, the new facility will result in a greater volume of business being carried on over the land. The lower court concluded that this was a continuation of the natural growth and expansion of a lawful nonconforming use; that it would not be detrimental to the public health, welfare and safety. This conclusion is justified by the evidence. This Court has held that a zoning ordinance cannot prohibit the natural expansion of the business constituting the nonconforming use. See *Humphreys v. Stuart Realty Corp.*, 364 Pa. 616, 73 A. 2d 407 (1950). We ruled also in *Haller Baking Co.'s Appeal*, 295 Pa. 257, 145 Atl. 77 (1928), that the law does not require the court to speculate as to the number of acts or business transactions necessary to constitute an "existing use". In fact therein, the Court said that the use for which the property is adopted need not even be in operation at the time of the passage of the ordinance, if the attending circumstances connected with the property bear out the conclusion that the owner intended to use the property for that purpose and are sufficient to put the neighborhood on notice. Certainly, such circumstances exist herein. In *Cheswick Boro. v. Bechman*, 352 Pa. 79, 42 A. 2d 60 (1945), we decided that where a zoning ordinance, provides in general terms, for the continuance of a lawful existing use, it imposes no restraint upon broadening the scope of the existing use, even though

the use, as exercised at the time the ordinance was enacted, did not utilize the entire tract of land. In such a case (p. 82), "The prohibition of the Ordinance is directed to new uses; it imposes no restraint upon broadening the scope of the existing use." See also, *Haller Baking Co.'s Appeal*, supra; *Firth v. Scherzberg*, 366 Pa. 443, 77 A. 2d 443 (1951); *Davis Appeal*, 367 Pa. 340, 80 A. 2d 789 (1951).

The fact that the nonconforming use was carried on by a tenant and that it is now contemplated to lease the land to a new tenant is not controlling. The right to continue the nonconforming use, once established and not abandoned, runs with the land and this right is not confined to any one individual or corporation. A vested right, unless abandoned, to continue the nonconforming use is in the land.

Finally, the argument that the period during which the actual user carrying on the nonconforming use was a mere licensee without pecuniary gain to the landowner should not be considered, is without merit. This contention would apply with equal force to the situation wherein a tenant defaulted in the payment of the rent. Certainly, the preservation of the property right is not predicated upon the owner thereof employing the right in a manner calculated to a continuing pecuniary return.

Order affirmed.

Mr. Justice BELL and Mr. Justice COHEN dissent.