## McGlone Appeal

*Charles C. Keeler,* for appellants.

*Joseph F. Battle,* for appellee.

GORBEY, J., August 10, 1970.—Joseph L. McGlone and his wife are the owners of certain premises known as 1201 Highland Avenue, in the City of Chester. The property was acquired in December of 1939.

At that time there existed on the front of the property a two and one-half story frame dwelling house. In April of 1945, Mr. and Mrs. McGlone secured a building permit from the City of Chester to build a garage on the rear of their lot. During the course of the construction they then decided to use the building as a store and requested a permit to construct it. The request for the permit was refused and Mr. and Mrs. McGlone appealed to the zoning board.

A hearing was held on the appeal, and in December of 1945, the zoning board ruled that a variance be granted and that a permit be issued for the proposed construction. Pursuant thereto, a permit was issued to make the necessary alterations so that the uncompleted building might be used as a store. From 1946, when the alterations were completed, to the present time, the building to the rear of the residence has been used as a neighborhood grocery store.

In May of 1969, the McGlones entered into an agreement of sale to sell 1201 Highland Avenue to the Southland Corporation for the purpose of erecting a 7-Eleven Store. The proposed new store building is to be located on the site of the present store. With regard to the two and one-half story residence, this is to be removed and on-site parking provided for the store. Mr. and Mrs. McGlone made an application for a special exception, requesting permission to replace the present store with the 7-Eleven structure.

A hearing was held before the Zoning Hearing Board of the City of Chester on June 19, 1969. Subsequent thereto on July 30, 1969, the zoning hearing board rendered its decision refusing the application. The decision, however, was not accompanied by findings of fact and conclusions of law. Thereafter, in August of 1969, the McGlones filed an appeal to this court, taking the position that no decision was ever made since the zoning hearing board failed to make

written findings of fact and conclusions within 45 days from the date of the hearing as required by section 908 of the Pennsylvania Municipalities Planning Code of July 31, 1968 (Act No. 247), 53 PS §10101-908.

The zoning board countered this with a petition and rule to show cause why they should not be allowed to file a supplemental opinion and order in which they could set forth in full the specific grounds for denying the application.

By order of this court dated February 16, 1970, the proceedings were referred back to the zoning hearing board for the taking of additional testimony, if desired, and the issuing of a decision, accompanied by findings of fact. Neither party requested to present additional testimony, and the board under date of April 18, 1970, issued its opinion. The matter is presently before the court for review.

The property in question is located in a district designated under the Chester Zoning Ordinance as R-3. Appellant seeks by special exception to accomplish the following:

a. Demolition of the present store and erection of a building to house a 7-Eleven Store in its place and the continuation of the nonconforming use;

b. Permission to allow the new building to maintain the same nonconformity as the old building with regard to side and rear-yard requirements;

c. Permission to have the two and one-half story residence demolished for parking for the new store.

Appellant cites as authority for their request article XI, sec. 1101, of the Chester Zoning Ordinance. It provides as follows:

"Section 1101. NONCONFORMING BUILDINGS OR USES.

"1. CONTINUATIONS. Any lawful use of a building or land existing at the effective date of this Ordi-

nance, or authorized by a building permit issued prior thereto, may be continued although such use does not conform to the provisions of this Ordinance.

"2. EXTENSION. A nonconforming use of a portion of a building may be extended throughout the building if no structural alterations or additions are made therein, provided that such extensions may include structural alterations or additions when authorized as a special exception; a nonconforming use may be extended upon the lot occupied by such use and held in single and separate ownership at the effective date of this Ordinance when authorized as a special exception; provided that any extension or enlargement shall conform to the area and height regulations of the district in which it is situated.

"3. CHANGE. A nonconforming use of a building or land may be changed to a nonconforming use of the same or more restricted classification, if no structural alterations are made therein, provided that such change may include structural alterations when authorized as a special exception. Whenever a nonconforming use of a building or land has been changed to a use of a more restricted classification or to a conforming use, such use shall not thereafter be changed to a use of a less restricted classification.

"4. RESTORATION. A nonconforming building which has been damaged or destroyed by fire or other causes to an extent of not more than seventy-five (75) per cent of its value, or a nonconforming building which has been legally condemned, may be reconstructed and used for the same nonconforming use, provided that (a) the reconstructed building shall not exceed in height, area and volume the building destroyed or condemned, and (b) building reconstruction shall be commenced within one (1) year from the date the building was destroyed or condemned and shall be carried on without interruption.

"5. ABANDONMENT. If a nonconforming use of a building ceases for a continuous period of one year or more, or if nonconforming use of land ceases for any length of time for any reason, subsequent use of such building or land shall be in conformity with the provisions of this Ordinance."

The use as a store is a nonconforming use. Such a use runs with the land and is not peculiar to the owner of the land at the time it was created. See Eitnier v. Kreitz Corporation, 404 Pa. 406, 172 A. 2d 320 (1961).

Appellant contends that a structure housing a nonconforming use can be replaced by a similar nonconforming structure for a *similar* nonconforming use. Although the cases cited in support of this involved involuntary destruction, e.g., by fire, of the premises in question, we will assume that the McGlones could demolish the present store and erect a new one within the same building lines for the conduct of their neighborhood grocery store. The issue, therefore, resolves itself into whether or not the proposed use by the Southland Corporation is the same or so similar to the McGlone use as to require the grant of a special exception. The zoning board held that it was not. With this finding, we agree.

In determining whether a proposed use is similar to an existing use, it must be ascertained what the existing use is. In Haller Baking Company's Appeal, 295 Pa. 257 (1928), the court said a determination of the existing use is made from "utilization of the premises so that they may be known in the neighborhood as being employed for a given purpose." In this case, the premises in question was utilized over a 24-year period as a small neighborhood grocery store located at the rear of appellants' residence. This is as it was known to the neighborhood.

Having determined the existing use, the next ques-

tion is whether the proposed use fits within this non-conforming use or is an unauthorized extension or enlargement. In this regard, it is, of course, to be considered that a nonconforming use cannot be limited to the precise magnitude existing at the time of the passage of the ordinance but may be increased to the extent required by the national expansion in growth of the trade. See Humphreys v. Stuart Realty Corporation, 364 Pa. 616, 73 A. 2d 407 (1950).

The Massachusetts Supreme Court has set down a three-fold test for determining whether the proposed use is within the nonconformity or is an unauthorized extension. It is as follows:

a. Whether the use reflects the nature and purpose of the use prevailing when, by ordinance, it became a nonpermitted use;

b. Whether there is a difference in the quality or character as well as the degree of use;

c. Whether the current use is different in kind in its effect on the neighborhood. See Town of Bridgewater v. Chuckran, 351 Mass. 20, 217 N.E. 2d 726 (1966).

Applying the above tests to the case at bar, it is apparent that the proposed use is an unauthorized extension of the present use. The store contemplated is not a small family-owned neighborhood grocery store but a chain store operation run by a large corporation with a variety of merchandise outside the food line than was previously offered. It will be open seven days a week, 16 hours a day; it will draw from areas beyond the present immediate neighborhood, resulting in a heavy volume of traffic. As far as the effect on the neighborhood aside from the increased traffic from additional customers and delivery trucks, there will be additional indoor and outdoor lighting and noise incidental to the proposed use. Further, the store will be visible to Highland Avenue

residents, whose view would be blocked because of the residence on the premises. This would detract from their house value. We, therefore, conclude that the proposed use of the subject property is different in kind, not merely in degree from the present nonconforming use, and, therefore, such use cannot be permitted by special exception under the above-quoted sections of the Chester Zoning Code.

The next issue is appellants' request to have the residence demolished and made into a parking area. Appellants contend they are entitled to a special exception for this use. The basis of appellants' position is two-fold. First, they argue that the use as a parking lot would merely be an accessory use to the subject store. Appellants contend that the present owners, Mr. and Mrs. McGlone, could at any time provide such on-site parking without any zoning approval. In the alternative, appellants contend that said parking would be allowed as a natural expansion of the present nonconforming use.

Off-street parking under the situation present here is not such an accessory use to a small neighborhood grocery store as would permit the present owners to demolish the residence to provide it. The primary use of the subject property is residential. A two and one-half story building is present on the property as a residence. The variance which was granted permitted a small building to the rear to be used as a neighborhood store. To permit by special exception the demolition of the residence is an extension of the commercial use in the manner never contemplated at the time the variance was originally granted. The said use can only be granted through a variance or application for rezoning, neither of which are before this court.

In the case of Food Corporation v. Zoning Board of Adjustment, 384 Pa. 288, 121 A. 2d 94 (1956),

the court held that off-street parking by patrons of a restaurant was not such an accessory use customarily incidental to the permitted use, i.e., the operation of the restaurant, as would entitle the restaurant to such use as a matter of absolute right.

Further, in view of our determination that the proposed use by the Southland Corporation is different in kind not merely in degree from the present nonconforming use, it cannot be argued that demolition of the residence is permitted under the doctrine of natural expansion of a nonconforming use.

The final contention of appellant involves interpretation of sections 908, 909 and 910 of the Pennsylvania Municipalities Planning Code. Specifically, appellant argues that the board did not render a decision within 45 days and, therefore, under the act the decision "shall be deemed in favor of the applicant." Appellant does not deny that they received a decision of the board within 45 days of the hearing indicating that their application was being turned down. Appellant contends, however, that this decision was not accompanied by findings of fact which appellants contend were essential to a competent decision. In other words, appellants contend that no decision could be made unless it were accompanied by findings of fact and conclusions of law. There were no cases cited in support of this position nor are any known to this court.

The reason given for the failure of the decision to have the required findings of fact and conclusions of law is that the official court reporter who took the testimony apparently failed to have the same transcribed until after 45 days had passed. It is agreed by both parties that this was not due to the fault of either of them but was a condition beyond the control of both. Appellee was, therefore, faced with the dilemma of doing nothing and having the application ap-

proved or submitting the decision to be followed up by the findings of fact and conclusions of law.

The above-cited section of the Municipalities Act was inserted so that applicants would not be prejudiced by undue delay on the part of zoning boards. There is no indication at all in this matter that the zoning board was dilatory in any respect in handling this application, nor is there any indication of prejudice to the applicant from the failure of the decision initially to contain any findings of fact and conclusions of law. We, therefore, make the following:

ORDER

And now, August 10, 1970, after argument and consideration of the briefs of counsel, it is ordered and decreed that the decision of the Zoning Hearing Board of the City of Chester in this matter be affirmed and appellants' appeal is hereby dismissed.