572 P.2d 164

**GORDON PAVING COMPANY,**
Plaintiff-Appellant,

v.

**BLAINE COUNTY BOARD OF COUNTY
COMMISSIONERS,**

and

**Thornley U. Williams et al.,**
Defendants-Respondents.

No. 12142.

Supreme Court of Idaho.

May 2, 1977.

On Rehearing Dec. 2, 1977.

James L. Kennedy, Jr., Walker & Kennedy, Twin Falls, for plaintiff-appellant.

Thomas B. Campion, Pros. Atty., Blaine County, Robert Korb, III, Kneeland, Laggis, Korb & Collier, Ketchum, for defendants-respondents.

DONALDSON, Justice.

This case was tried before the district court on a stipulation of facts agreed to by the parties. Plaintiff-appellant Gordon Paving operated a rock crusher and an asphalt plant on land in Hidden Hollow, Blaine County. The use antedated the effective date of Blaine County's first zoning ordinance. Hidden Hollow was zoned as low density residential, but since the use preceded the zoning ordinance it became a valid non-conforming use.

After the effective date of the ordinance Gordon Paving sought to modernize its asphalt plant. Accordingly, it applied to Blaine County's zoning board (hereinafter referred to as Blaine County) for a variance. Blaine County granted the' variance, but conditioned it on the removal of the entire operation from Hidden Hollow within three construction seasons. It is disputed whether Gordon Paving ever accepted the condition, even though no appeal was made at that time. Gordon Paving modified its original asphalt plant replacing some obsolescent components with a more efficient system. As part of the same modernization plan, Gordon Paving discontinued the use of its rock crusher and moved it to a different location in Blaine County. Gordon Paving operated its plant as modified for three construction seasons. At the end of the 1973 season when the conditional variance was about to expire, Gordon Paving instituted proceedings challenging the validity of the variance. After exhausting its administrative remedies, it appealed to the district court. The district court upheld the validity of the variance and its terms and this appeal followed.

The threshold issue on appeal is whether a variance was necessary under Blaine County's zoning ordinances to authorize Gordon Paving's modifications of its Hidden Hollow plant. The other issues raised on appeal—whether a three year termination period was a reasonable condition to attach to a variance and whether Gordon Paving acquiesced in the condition—are moot if Gordon Paving's modifications could have been implemented without a variance. We agree with Gordon Paving that a variance was not necessary.

In reaching this conclusion we note that judicial review of decisions of municipal zoning authorities is limited. As administrative bodies having expertise in the zoning problems of their particular jurisdictions, their actions are presumptively valid. Where there is a basis for a reasonable difference of opinion, a court may not substitute its judgment for that of the zoning authority. *Ready-to-Pour, Inc. v. McCoy,* 95 Idaho 510, 511 P.2d 792 (1973); *Cole-Collister Fire Protection District v. City of Boise,* 93 Idaho 558, 468 P.2d 290 (1970); 3 Anderson, American Law of Zoning § 21.916 (1968).

The deference paid to the expertise of zoning authorities does not allow a zoning board to reach a decision that is not supported by substantial evidence, however. Although the scope of review is narrow, a decision will not be sustained if there is no evidence which supports it or if it is supported by evidence which falls short of being substantial. 3 Anderson, American Law of Zoning § 21.17 (1968).

Applying these principles to the case at bar we reach the conclusion of law that a variance was not necessary to effectuate Gordon Paving's modifications. Since a record of the administrative proceedings was not maintained, we base our decision upon a review of the stipulation of facts agreed to by the parties. Blaine County's position that its zoning ordinances require a variance is not supported by substantial evidence. The relevant zoning ordinances require a variance for non-conforming changes of use or for enlargements or extensions of non-conforming uses. The modifications implemented by Gordon Paving do not fall under either of these categories.

On appeal Blaine County relies exclusively on the argument that Gordon Paving's modifications constituted an enlarge-

ment or extension of an existing use.[1] In support of this theory, Blaine County points to the fact that the size of Gordon Paving's modified asphalt plant was larger than the prior plant. It is undisputed, however, that Gordon Paving was originally operating a rock crusher as well as an asphalt plant as part of one operation at the Hidden Valley site. Gordon Paving moved its rock crushing facilities to a new location when it modernized its asphalt plant. The size of Gordon Paving's total operation was actually decreased after the modifications. At the most this case involves a reasonable substitution of more modern facilities for obsolescent equipment. Generally, such a substitution does not constitute an enlargement or extension. *Chilson v. Board of Zoning Appeals,* 344 Mass. 406, 182 N.E.2d 535 (1972); *Eitnier v. Kreitz Corporation,* 404 Pa. 406, 172 A.2d 320 (1961); *E. C. Schnieder, Inc. v. Zoning Board,* 389 Pa. 593, 133 A.2d 536 (1956).

The only other evidence that Blaine County has introduced is that Gordon Paving's volume of output increased. Blaine County conceded, however, that this increased capacity resulted from the greater efficiency of the modernized equipment. The operating time and the environmental impact of the plant were substantially reduced despite the increase in volume. Case law in other jurisdictions has held that as a matter of law an increase in the volume of use is not an enlargement or extension. 1 Anderson, American Law of Zoning § 6.32 (1968). The same result must certainly inhere when increased volume is accompanied by a greater compatibility with the surrounding locale.

▬ The fact that Gordon Paving initially requested a variance is not proof that a variance was required. Blaine County's zoning ordinances are determinative. A zoning commission cannot predicate the application of a zoning ordinance on a petitioner's erroneous assumption that it was applicable.

Judgment reversed. Costs to appellants.

BAKES and BISTLINE, JJ., concur.

BAKES, Justice, concurring:

I concur in the opinion of the majority, but wish to add some comments to address statements found in the dissenting opinion of the Chief Justice. The import of the Chief Justice's dissent is that the Court should look no farther than the terms of the zoning ordinance or the variance which was granted to determine Gordon Paving Company's right to the continued operation of the asphalt plant. I emphatically disagree with that premise.

The right to continue a non-conforming use in existence at the time of enactment of a zoning ordinance does not depend upon the permission to continue such uses which zoning ordinances usually contain, but is instead a constitutionally protected right. *Cole-Collister Fire Protection Dist. v. City of Boise,* 93 Idaho 558, 561, 468 P.2d 290 (1970); *O'Connor v. City of Moscow,* 69 Idaho 37, 41, 202 P.2d 401 (1949). As this Court said in *O'Connor:*

"Zoning ordinances generally look to the future and while preventing the establishment of lawful businesses, yet avoid violations of the due process clauses of the State and Federal Constitutions by permitting existing non-dangerous businesses to remain. (Citations omitted).

. . . . .

"An ordinance which prohibits the continuation of existing lawful businesses within a zoned area is unconstitutional as taking property without due process of law and being an unreasonable exercise of the police power." 69 Idaho at 41, 202 P.2d at 403.

The Moscow ordinance being considered in *O'Connor* effectively prohibited the continuation of a non-conforming use following the sale of the property and the business upon the property. This Court found that provision to be an unconstitutional taking of private property:

---

1. Blaine County admitted that Gordon Paving's modifications did not entail any change in the basic nature of the operation. Both before and after the modifications, Gordon Paving was en-

gaged in asphalt production by the same basic process. As a matter of law, no change of use occurred.

"The effect of the provision of the ordinance here complained of is to deprive respondents of their property by preventing the sale of their business and restricting their leasing of the real property for use in connection therewith.

". . . The provision in question declaring a change in ownership to be a new business is an arbitrary and unreasonable exercise of the police power and violates the constitutional protection given by the due process clauses. . . . "Since lawful existing uses, although non-conforming, cannot be constitutionally eradicated because by so doing, the due process clauses are violated, it naturally follows in one logical step that the prevention of the sale of an existing business by such an ordinance has the same result, particularly since zoning ordinances are designed to deal with the use to which property may be put. . . . There is no reasonable relation between a provision in an ordinance which, as here, makes a change in ownership a new business, and the objects to be accomplished by the ordinance, when existing non-conforming uses of property are necessarily permitted to continue." 69 Idaho at 43, 202 P.2d at 404.

*O'Connor* makes it clear that the Idaho Constitution protects the continued existence of non-conforming uses. This Court has continued to recognize the validity of *O'Connor.* In *Cole-Collister, supra,* it said:

"The continuation of non-conforming uses is permitted because not to allow them to continue would be a violation of the due process clauses, cf., *O'Connor v. City of Moscow,* 69 Idaho 37, 202 P.2d 401, 9 A.L.R.2d 1031 (1949)." 93 Idaho at 561, n. 3, 468 P.2d at 293.

Based upon the decisions of this Court in *O'Connor* and *Cole-Collister,* Gordon Paving had a right to continue the use of its property as an asphalt plant, at least during the reasonable life of the property, and any attempt in the ordinance to sooner eliminate that use would have been a violation of due process of law under Art. 1, § 13, of the Idaho Constitution, and the taking of private property for public use without just compensation in violation of Art. 1, § 14, of the Idaho Constitution. Gordon Paving needed no variance to continue its use of the property, and the fact that it mistakenly thought otherwise and made application for such a variance could in no way deprive it of the rights which inured to it as a result of ownership of the real property. Although I join in the opinion of the majority and believe the grounds discussed in that opinion to be sufficient to dispose of the case, I further believe that these constitutional grounds should also be mentioned to rebut the argument of the Chief Justice.

McFADDEN, Chief Justice, dissenting.

Justice Traynor, in discussing those parameters which ought to guide a court in considering changes in a non-conforming use under contemporary zoning statutes, noted that:

" 'The object of such provision (allowing non-conforming uses) is the gradual elimination of the non-conforming use by obsolescence or destruction by fire or the elements, and it has been frequently upheld by the courts.' * * * There is a growing tendency to guard against the indefinite continuance of non-conforming uses by providing for their liquidation within a prescribed period. * * * Given the objective of zoning to eliminate non-conforming uses, courts throughout the country generally follow a strict policy against their extension or enlargement." *San Diego County v. McClurken,* 37 Cal.2d 683, 234 P.2d 972, 975 (1951). See also, *Cole-Collister Fire Protection District v. City of Boise,* 93 Idaho 558, 468 P.2d 290 (1970).

The majority opinion holds that appellant had a valid non-conforming use, and that the alterations undertaken in 1971 did not constitute prohibited enlargement so as to require county approval. I disagree with that conclusion, and would hold that once Gordon Paving goes voluntarily before the Zoning Board to request a variance, they may not sit quietly for three years under the ostensible authority of the conditional variance only to complain when the time comes to pay the piper. I shall consider

first the changes made in 1971 as prohibited changes of the non-conforming use, and will then address the effect of appellant's request for a variance and acceptance of the conditional variance granted by the county.

## I.

The oft repeated maxim that this court will not disturb the findings of the trial court when those findings are supported by substantial, although conflicting, evidence, bears recollection once again. *Ready-to-Pour, Inc., v. McCoy,* 95 Idaho 510, 511 P.2d 792 (1973). The trial court found that "This enlargement was more than a reasonable expansion. The non-conforming use was not the same before and after the passage of the ordinance." That court then found that the changes amounted to a prohibited enlargement of the non-conforming use, contrary to § 24.316 of the Blaine County zoning ordinance. That ordinance provides "A non-conforming use shall not be enlarged or extended and a non-conforming building shall not be enlarged or extended so as to increase the degree of non-conformity." The question properly before this court is whether there is substantial evidence to support the finding made by the trial court. The majority opinion attempts to undercut that evidence present on the record which supports the conclusion that Gordon Paving improperly altered its non-conforming use. I believe that the evidence in the record is adequate to support the trial court's finding, notwithstanding the fact that I or the majority might have reached a different conclusion if placed in the trial court's shoes.

The majority opinion first deals with the undisputed enlargement in the size of the asphalt plant. As the trial court notes, the enlargement is obvious from a comparison of the photographs introduced as exhibits. The majority rejects this conclusion by commenting that "Gordon Paving moved its rock crushing facilities to a new location when it modernized its asphalt plant. The size of Gordon Paving's total operation was actually decreased after the modernization." No authority is cited to establish the assumption made that a non-conforming

user may remove one aspect of an operation from a site and simultaneously be allowed to fill in the vacated slot with a doubling of another aspect of the operation. I believe such an assumption is contrary to an avowed goal of eventually eliminating non-conforming uses.

A more accurate analysis is that Gordon Paving abandoned its gravel operation. The trial court in its decision makes clear that there were two separate components to the Gordon Paving business. The trial court found that "Exhibit 19 is the application of Gordon Paving Company to establish a gravel operation near Bellevue. This indicates that the original purpose of the purchase of the Hidden Hollow property was at an end." It is well settled that a non-conforming use is considered abandoned once the owner relinquishes the particular use intentionally, and that once abandoned, the right to the non-conforming use is lost. 82 Am.Jur.2d, Zoning and Planning, §§ 215, 219 (1976). The gravel pit operation was abandoned by Gordon Paving. It does not suffice for the majority opinion to assert that the overall size of the business has not increased. Given the ultimate goal of eliminating non-conforming uses, Gordon Paving may not enlarge one operation, the hot-mix facility, merely because it moved out the gravel crushing operation.

The record additionally discloses a substantial increase in volume of output from the asphalt plant, which is apparently the result of the increased efficiency of the new asphalt plant. The majority opinion seizes upon a simultaneous decrease in operating time and concludes that, on-balance, there is no enlargement in the non-conforming use. This misses the point: to set-off increased volume with decreased *present* operating time ignores the critical possibility that the new productivity factor may in the future result in tremendous volume increases if operating time returns to present levels. I believe that the new machinery, with the great potential for even more volume, constitutes a prohibited enlargement of the non-conforming use. The majority opinion then notes that increases in volume are

normally considered permissible changes in non-conforming uses. This represents some oversimplification. Increased volume is usually allowed, because to prohibit such would amount to discouragement of enterprise; a landowner would be penalized for a successful enterprise which in the natural course of progress grows in volume. This reasoning, however, is inapplicable when the increased volume results from new facilities. As Professor Anderson has observed:

"Unauthorized extension of use is frequently detected where intensified use is accompanied by some enlargement or improvements of existing facilities, or where new land is used. Where the courts have detected some qualitative change in the use, in addition to an increase in volume or intensity, they have disapproved on the ground of unlawful extension, or change, or both." Anderson American Law of Zoning, § 6.45 (1968).

I would hold that the increased size of the asphalt plant, coupled with an increased volume output and potential for even greater volume increase in the future, when taken together constitute an enlargement prohibited by the Blaine County ordinance. I do not believe it can be said that there is a lack of substantial evidence to support the district court's findings; this court should therefore affirm those findings.

## II.

I also am convinced that the district court's findings as to the following are critical:

"On May 12, 1971, Gordon Paving Company filed an application with the Blaine County Planning and Zoning Commission for a variance to permit enlargement of its Hidden Hollow asphalt plant, by replacing the old plant with the new larger plant. * * * The Defendant, Blaine County Board of Commissioners contends that when the applications for a variance was made, the variance was granted with a condition that Gordon Paving move out of Hidden Hollow entirely by the end of the 1973 construction year. Defendants further contend that Gordon Paving Company did not appeal that decision im-

posing the condition, but installed the new plant and operated it under the authority of the variance * * *.

One fact is paramount. At the time the condition to move the plant in 1973 was imposed, all parties believed the modified or enlarged plant was an enlargement of the non-conforming use. This belief was not challenged until the time for the performance of the condition arrived. * *.

I find that Gordon Paving accepted the condition, and that the variance created an advantage to it. Under these circumstances, Gordon Paving Company cannot now be heard to complain."

I am convinced that this conclusion is sound. I would hold that a land-owner cannot seek a variance, be granted that variance with conditions, accept the variance for three years and then balk when the time comes to uphold its end of the bargain. The Colorado court reached a similar conclusion in *Di Salle v. Giggal,* 128 Colo. 208, 261 P.2d 499 (1953), when it held that:

"By his testimony, defendant admitted ownership of the lands; that they were in an A1 district; that his attempted use of the land for nine family units had been stopped; that he had agreed after the war housing emergency had ceased to reduce his housing units to five; that after said emergency had ceased, he had refused to do so; and that nine families are living on his lands. The trial court in effect found the zoning regulations and limitations were properly exercised in the present case, and reasonable, and that the regulations had been violated by defendant. Laches, estoppel and the one year statute of limitations do not here apply against plaintiffs; this would be particularly so where, as here, defendant had knowledge of the zoning provisions, entered into an agreement concerning same, and acted thereon to his benefit; he may not now by repudiating his agreement, thereby avail himself of said defenses."

At any rate, it is irrelevant whether Gordon Paving would be estopped to claim the right to a non-conforming use as they lost that right to a non-conforming use when they enlarged the operation.

In this same vein, Gordon Paving claims that the condition imposed was beyond the rightful authority of the board and that a condition resulting in the total expiration of the operation cannot be imposed. However meritorious this position might have been in 1971, it is too late now to make such a claim. For three years, and more during the pendency of this appeal, Gordon Paving smugly accepted the advantages of the variance. They could have appealed when the condition was imposed, but did not. They cannot now be heard to cry that the variance they accepted and used was improper. This position is well supported in case law, and I believe it to be applicable. *Edmonds v. Los Angeles County,* 40 Cal.2d 642, 255 P.2d 772 (1953); *Zweifel Manufacturing Corp. v. City of Peoria,* 11 Ill.2d 249, 144 N.E.2d 593 (1957); *Nathanson v. D. C. Board of Zoning Adjustment,* 289 A.2d 881 (D.C.App.1972).

SHEPARD, J., concurs.

## ON PETITION FOR REHEARING

DONALDSON, J.

The petition for rehearing in the above entitled action was granted and reargued. The Court has reviewed the record, considered the arguments presented by counsel, and we continue to adhere to the views expressed and the conclusion reached in our earlier opinions.