## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-00653-SCT

*RED ROOF INNS, INC.*

*v.*

*CITY OF RIDGELAND, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/12/1999 |
| TRIAL JUDGE: | HON. JOHN T. KITCHENS |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MARK D. HERBERT |
| ATTORNEY FOR APPELLEE: | JERRY L. MILLS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 03/01/2001 |
| MOTION FOR REHEARING FILED: | 3/22/2001 |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE AND FACTS

¶1. This is an appeal by Red Roof Inns, Inc. (Red Roof) from a decision of the Madison County Circuit Court, upholding the validity of certain portions of the City of Ridgeland's sign ordinance. The ordinance adopted by the City of Ridgeland on January 2, 1991, was the result of the City's extensive review of its land use planning that included the study of on-premises business signs. Input from businesses within the City, including Red Roof, was sought. Public hearings were held before the adoption of the ordinance which regulated the placement of new signs within the city limits. The new ordinance did not "grandfather" existing non-conforming signage, but rather contained an amortization schedule based on original construction cost. Signs of an original construction cost of greater than $7,000 were assigned the maximum amortization period of five years, and thus Red Roof had five years in which to comply.

¶2. At the end of the five year period, the City gave notice to Red Roof and several other businesses that their signs remained non-conforming and should be removed or brought into compliance. Red Roof, along with five other businesses whose signs were in place at the adoption of the ordinance, appealed to the Sign Appeals Board on constitutional grounds, alleging that the building inspector's acts under the ordinance were invalid, illegal, arbitrary and capricious. The Sign Appeals Board entered an order denying the requested relief. Red Roof, aggrieved by the board's decision, perfected its appeal to the Madison County Circuit Court.

¶3. The circuit court upheld the decision of the Sign Appeals Board, ruling that the "ordinance regulating signs within [Ridgeland] does not affect taking or damaging of the Appellant's property without providing the payment of due compensation. The ordinance does not violate Article 3, Section 17 of the Mississippi Constitution of 1890 or the United States Constitution." The court went on to say that the city engaged in a valid exercise of its police power, and also noted that "the Appellants took no action to contest the validity or constitutionality of this sign ordinance until five (5) years after its effective date."

¶4. Aggrieved by the circuit court's judgment upholding the decision of the Board of Sign Appeals, Red Roof appeals to this Court, raising three issues which we combine as follows:

**I. DID THE CIRCUIT COURT ERR IN FINDING THAT SECTION 18-7(d)(3) OF THE ORDINANCE DOES NOT VIOLATE ART. 3 § 17 OF THE MISSISSIPPI CONSTITUTION NOR IMPERMISSIBLY DESTROY ANY VESTED INTEREST OF RED ROOF IN ITS NON-CONFORMING USE?**

**II. DID THE CIRCUIT COURT ERR IN FINDING THAT AMORTIZATION EQUALS JUST COMPENSATION IN VIOLATION OF MISSISSIPPI CODE ANN. § 49-23-1 *et seq.*?**

¶5. Finding no error, we affirm the circuit court's decision upholding the validity of the pertinent portions of the City's sign ordinance.

## STANDARD OF REVIEW

¶6. This Court has stated that neither it, nor the circuit court, should sit as a super-zoning commission. ***City of Biloxi v. Hilbert***, 597 So.2d 1276, 1281 (Miss. 1992). The appellate court should not determine whether it would adopt the ordinance in question; instead it should determine whether the City's decision to adopt the ordinance is reasonable and supported by substantial evidence. ***Id.*** The decisions of municipal authorities in zoning decisions are presumed to be valid legislative decisions. ***Woodland Hills Conservation Ass'n, Inc. v. City of Jackson,*** 443 So.2d 1173, 1180 (Miss. 1983). In examining a zoning order issued by a city council, the circuit court sits as an appellate court with a restricted scope of judicial review. ***Ridgewood Land Co. v. Moore,*** 222 So.2d 378, 379 (Miss. 1969). To be reversed, the order must be shown to be arbitrary, capricious, discriminatory, beyond the legal authority of the City Board or unsupported by substantial evidence. ***Id.*** at 379.

## DISCUSSION

**I. DID THE CIRCUIT COURT ERR IN FINDING THAT SECTION 18-7(d)(3) OF THE ORDINANCE DOES NOT VIOLATE ART. 3, § 17 OF THE MISSISSIPPI CONSTITUTION, OR IMPERMISSIBLY DESTROY ANY VESTED INTEREST OF RED ROOF'S IN ITS NON-CONFORMING USE?**

¶7. Red Roof argues that the City's enforcement of the sign ordinance was an unconstitutional taking of its property under Article 3, Section 17 of the Mississippi Constitution.[1] Red Roof mistakenly relies upon ***Jackson Mun. Airport Auth. v. Evans*** in support of this argument. *Evans* concerns eminent domain controversies in which there is an actual taking for public use, principles which do not have equal application in zoning matters. ***Jackson Mun. Airport Auth. v. Evans***, 191 So.2d 126, 132-33 (Miss.

1966).

¶8. The City agrees with Red Roof that *Evans* is instructive, but distinguishes *Evans* on the grounds that it was decided under the Airport Zoning Act, which provided for non-conforming uses. Pursuant to that Act, zoning regulations were adopted, one of which prohibited trees in excess of 50 feet in height in approach zones. *Evans*, 191 So.2d at 127. The *Evans* Court reviewed the law regarding the ownership of air rights above one's property and held that the airspace involved in that case was not in the public domain. *Id.* at 133. Concerning the property's proximity to the surface, the Court opined that "under the guise of a perhaps otherwise valid zoning order Appellants have so interfered with and restricted the use and enjoyment of Defendants-Appellee's private property as to constitute a taking or damaging thereof for public use without due compensation being first made as required in Section 17 of the Constitution of the State of Mississippi." *Id.* This Court further stated:

> The fact that private property may not be taken for public use without compensation is not debatable. However, in determining whether this constitutional protection has been violated by the ordinance under consideration, two main issues arise: (1) Whether the air space above land is a constitutionally protected property right, and whether in the instant case there has been a constitutionally proscribed taking. . . . In considering [whether an unconstitutional taking has resulted] the distinction must be made between zoning regulations which merely restrict the enjoyment and use of property through a lawful exercise of the police power, and a taking of property for a public use, for which compensation must be paid. In the former instance, where the owner of property is merely restricted in the use and enjoyment of his property, he is not entitled to compensation. . . . **However, mere regulation under the police power which can be modified at the discretion of regulating authority is wholly different from the taking or appropriating of private property by the government for a specific public use.**

*Id.* at 132-33 (emphasis added).

¶9. As in *Evans,* we draw a distinction between the exercise of a regulation under the police power and a taking that requires compensation. Unlike the ordinance in *Evans*, which sought to appropriate the airspace above an owner's property for the airport's use, the City in this instance has not sought to appropriate non-conforming signs for public use. Rather, the City has adopted an ordinance requiring the removal of non-conforming signs pursuant to an exercise of police power.

¶10. ***Grant v. Mayor & City Council of Baltimore*** also provides a good analysis of the concerns considered in circumstances very similar to those in the present case. 129 A.2d 363 (Md. 1957). Baltimore passed an ordinance providing for removal from residential areas of billboards which constituted a non-conforming use after a five-year tolerance period. *Grant*, 129 A.2d at 263. As in the present case, the ordinance was challenged, and the Maryland Court of Appeals stated:

> Nonconforming uses have been a problem since the inception of zoning. Originally they were not regarded as serious handicaps to its effective operation; it was felt they would be few and likely to be eliminated by the passage of time and restrictions on their expansion. For these reasons and because it was thought to require immediate cessation would be harsh and unreasonable, a deprivation of rights in property out of proportion to the public benefits to be obtained and, so, unconstitutional. . . . [M]ost, if not all, zoning ordinances provided that lawful uses existing on the effective date of the law could continue, although such uses could not thereafter be begun. Nevertheless, the earnest aim and

ultimate purpose of zoning was and is to reduce nonconformance to conformance as speedily as possible with due regard to the legitimate interests of all concerned. . . .'The right . . . to continue a non-conforming use is not a perpetual easement to make a use of one's property detrimental to his neighbors and forbidden to them.'

*Id.* at 365 (internal citations omitted). *See also State ex rel. Dema Realty Co. v. McDonald,* 121 So. 613, (La. 1929)(forced closing of grocery store in residential district after one year amortization period upheld); *State ex rel. Dema Realty Co. v. Jacoby,* 123 So. 314 (La. 1929)(one year grace period for drug stores upheld as constitutional); *Standard Oil Co. v. City of Tallahassee,* 183 F.2d 410 (5th Cir. 1950)(ordinance requiring closing of gas station near State Capitol building after ten-year amortization period upheld).

¶11. The *Grant* court also stated:

Implicit in the theory of the police power, as differentiated from the power of eminent domain, is the principle that incidental injury to an individual will not prevent its operation, once it is shown to be exercised for proper purposes of public health, safety, morals, and general welfare, and there is no arbitrary and unreasonable application in the particular case.

*Grant*, 129 A.2d at 366 (citing *Livingston Rock & Gravel Co. v. Los Angeles County,* 272 P.2d 4, 8 (Cal. 1954)).

¶12. The case of *PA Northwestern Distribs., Inc. v. Zoning Hearing Bd.,* which speaks specifically to the issue of reasonable amortization provisions, stated:

The weight of authority supports the conclusion that a reasonable amortization provision would not be unconstitutional. It has been stated that a blanket rule against amortization provisions should be rejected because such a rule has a debilitating effect on zoning, unnecessarily restricts a state's police power, and prevents the operation of a reasonable and flexible method of eliminating nonconforming uses in the public interest. . . . Other cases have considered several factors in determining the reasonableness of these provisions. Those factors weigh any circumstance bearing upon a balancing of public gain against private loss, including the length of the amortization period in relation to the nature of the nonconforming use. . . . Our case law has expressed a preference for the protection of nonconforming uses in the face of changing zoning ordinances. . . . That protection, however, is not absolute.

584 A.2d 1372, 1377 (Pa. 1991)(internal citations omitted). A large majority of cases have upheld a variety of sign amortization provisions. Jay M. Zitter, *Validity of Provisions for Amortization of Non-conforming Uses*, 8 A.L.R. 5th 391, 408 (1992). The cases cited by this annotation discuss cases in which courts have upheld amortization provisions requiring the removal of non-conforming signs. For example, in *E.B. Elliott Adver. Co. v. Metropolitan Dade County*, a case directly on point, the Fifth Circuit determined that an ordinance providing for the discontinuance of non-conforming use after a five year amortization period for non-conforming signs did not constitute a deprivation of property without due process of law. 425 F.2d 1141, 1155 (5th Cir. 1970).

¶13. Furthermore, in *Palazzola v. City of Gulfport*, this Court held that the right to continue a non-conforming use may be lost even where significant value remains in the prior use, and that the

reasonableness of a zoning ordinance and the exercise of the police power must be determined on the facts of the particular case. 211 Miss. 737, 52 So.2d 611, 612 (1951).

¶14. For the foregoing reasons, we find all aspects of this issue to be without merit.

### II. DID THE CIRCUIT COURT ERR IN FINDING THAT AMORTIZATION EQUALS JUST COMPENSATION IN VIOLATION OF MISSISSIPPI CODE ANN. § 49-23-1 *et seq.* ?

¶15. Red Roof also cites the following language from § 49-23-17(2) of the Mississippi Code which governs regulation of off-premises outdoor advertising signs along Mississippi's primary highways:

> If any political subdivision or other governmental agency requires the removal of any outdoor advertising sign lawfully erected, just compensation shall be paid to the owner of the sign for the cost of removal plus the fair market value of the sign removed. The use of amortization for whatever period shall not constitute just compensation.

Miss. Code Ann. § 49-24-17(2) (1999). Red Roof argues that, "[w]hile this section is directed to off-premises signs, the principles therein should be applied to Red Roof's signage as well." This argument fails in light of the plain language of § 49-23-17(4), which provides: "This section shall not apply to any on-premises sign ordinance adopted by a political subdivision or other governmental agency before May 15, 1992." The application of the principle suggested by Red Roof would not only be in dissonance with legislative intent, but would contradict the clear language of the statute.

¶16. For the foregoing reasons, this issue is without merit.

### CONCLUSION

¶17. The City of Ridgeland's ordinance appears to be reasonably devised and written. The ordinance included fairly established amortization periods based on the original cost of construction of the non-conforming signs. The City applied it equally to all businesses. Numerous non-conforming signs were removed as the various amortization periods ran. When the final amortization period expired and notice was given to the several businesses with remaining non-conforming signs, only the six original appellants failed to comply. Red Roof was the only original appellant to appeal the circuit decision to this Court.

¶18. The City of Ridgeland, in adopting this ordinance and applying the amortization period for which the ordinance provided, engaged in a valid exercise of the police power. The ordinance does not amount to a taking under Article 3, Section 17 of the Mississippi Constitution, and the decision of the circuit court comports with the majority view. The judgment of the circuit court is therefore affirmed.

¶19. **AFFIRMED.**

> **PITTMAN, C.J., SMITH, WALLER, DIAZ AND EASLEY,JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, P.J. MILLS, J., NOT PARTICIPATING.**

> **McRAE, PRESIDING JUSTICE, DISSENTING:**

¶20. Mississippi's constitution provides that for every wrong, there is a redress. Miss. Const. art. III, § 24.

When the City of Ridgeland enacted their signage ordinance, they forced users of non-conforming signs, the use of which was legal prior to the ordinance, to either conform to the new guidelines or to take their signs down within five years. Under either option, the City's ordinance constitutes a taking of the property of the owners of these signs, which violates a vested right to these owners. This "taking" cannot be without due compensation to Red Roof Inns because a property right has been taken from it. Accordingly, I dissent.

¶21. The majority states that Red Roof mistakenly relies upon the case of *Jackson Mun. Airport Auth. v. Evans*, 191 So. 2d 126 (Miss. 1966), to support its argument. From the quoted language of *Evans*, the majority emphasizes the distinction between a "mere regulation under the police power" and a "taking or appropriating of private property," drawing the conclusion that the ordinance is simply an exercise of the City's police power. However, the majority fails to emphasize the language in *Evans* that states the two main issues to be considered when determining whether a constitutional protection has been violated by an ordinance. To determine a violation, the court must consider (1) whether the ownership in the property is a constitutionally protected property right and (2) whether there has been a constitutionally proscribed taking. The ownership in the sign in this case is a vested property right, and one that is protected by our constitution.

¶22. We have stated that, "the nature of the right to a non-conforming use is a property right" *Barrett v. Hinds Co.*, 545 So. 2d 734, 737 (Miss. 1989). Non-conforming uses have been allowed to continue where the use was lawful at the time of the adoption of the ordinance, so long as the use did not change or become abandoned. *Id.* Once a non-conforming use has been established and not abandoned, it runs with the land. *Id.* (citing *Appeal of Indianhead, Inc.*, 414 Pa. 46, 198 A.2d 522 (1964); *Eitnier v. Kreitz Corp.*, 404 Pa. 406, 172 A.2d 320 (1961)). Red Roof's ownership is a property right that cannot be taken without just compensation.

¶23. In addition, the lower court did not even address the issue of Red Roof's constitutional rights, finding that Red Roof had not brought its claim within the five-year amortization period. This time span has no bearing on Red Roof's right to bring its claim now, because its grievance did not arise until the Sign Appeals Board forced its compliance. Instead, the lower court affirmed the ruling of the Sign Appeals Board, which has no authority to address the constitutional rights of the parties. Red Roof properly petitioned the lower court for a review of their constitutional rights, and a proper review should have been granted.

¶24. The majority states that Red Roof erroneously relies on Miss. Code Ann. § 49-23-17(2) (1999), to support its argument that it should receive just compensation, stating that this code section is qualified by the date restriction in § 49-23-17(4). Despite the language of the statute, it is clear that the statute was attempting to follow the principles of our state's constitution, that every wrong has a redress. Despite the date restriction, the language of the statute provides a clear indication that just compensation should also apply to on-premises signs. Therefore, this statute does not prohibit recovery by Red Roof in this case, especially since its protected rights have been violated, and because the statute is following the mandates of our state's constitution.

¶25. The majority lists a number of cases from other jurisdictions in support of amortization provisions, but there are also a number of jurisdictions which do not support such provisions. *See also Town of Greenburgh v. General Outdoor Adver. Co.*, 109 N.Y.S.2d 826, 828 (1951); *City of Corpus Christi v. Allen*, 254 S.W.2d 759, 761 (Tex. 1953); *City of Akron v. Chapman*, 116 N.E.2d 697, 700 (Ohio 1953); *Town of Somers v. Camarco*, 127 N.E.2d 327, 328 (N.Y. 1955); and *James v. City*

*of Greenville*, 88 S.E.2d 661, 669 (S.C. 1955). Despite these cases, it is clear that Red Roof's property right has been taken from them, and under our constitution, its right should be protected.

¶26. I would remand to the trial court for a determination and award of just compensation to Red Roof Inns for the taking of its property right involving the sign.

¶27. For the above reasons, I dissent.

**BANKS, P.J., JOINS THIS OPINION.**

1. Red Roof does not challenge the constitutionality of the ordinance under the Takings Clause of the Fifth Amendment of the U.S. Constitution, on the theory that Art. 3, § 17 of the state constitution grants broader protection against mere "damage" rather than an actual taking. *See, e.g., Smith v. Mississippi State Highway Comm'n*, 183 Miss. 741, 184 So. 814 (1939).